75 A.3d 916

Ogden E. COLEMAN, II

v.

STATE of Maryland.

No. 90, Sept. Term, 2012.

Court of Appeals of Maryland.

Sept. 24, 2013.

**324**

Michael Patrick Lytle (Byron L. Warnken, LLC, Towson, MD), on brief, for petitioner.

Cathleen C. Brockmeyer, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for respondent.

Argued before BARBERA, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, McDONALD and BELL *, JJ.

GREENE, J.

Ogden Coleman, II, ("Petitioner") was tried by a jury in the Circuit Court for Baltimore County in July 2005 and convicted of first degree murder and conspiracy to commit first degree murder in the death of Quatrina Johnson. The court sentenced him to life without parole for first degree murder and to life imprisonment for conspiracy, to be served consecutively. On August 27, 2009, Coleman filed a petition for post-conviction relief pursuant to Md.Code (2001, 2005 Cum.Supp.), § 7–102 of the Criminal Procedure Article, in the Circuit Court for Baltimore County, alleging ineffective assistance of counsel. The Circuit Court denied the petition without reaching the merits of the specific claim at issue in the present case.

---

* Bell, C.J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

Coleman filed an Application for Leave to Appeal, which the Court of Special Appeals denied. Thereafter, Coleman filed a motion for reconsideration of the denial of his Application for Leave to Appeal, and the intermediate appellate court issued an Order granting the motion and recalling their earlier opinion. On reconsideration of Coleman's Application for Leave to Appeal, the intermediate appellate court determined that the Application lacked merit because Coleman was not prejudiced by the alleged errors of his trial counsel. The court then denied Coleman's Application. On November 16, 2012, we granted *certiorari, Coleman v. State*, 429 Md. 303, 55 A.3d 906 (2012), to answer the following question:

> Whether the Petitioner was prejudiced, in the *Strickland v. Washington* context, when trial counsel failed to object to the roughly 30 instances during trial where the State admitted evidence that Petitioner had remained silent in the face of police questioning/accusation while Petitioner was in custody and after he had been issued *Miranda* warnings?

We shall hold that Coleman received ineffective assistance of counsel and that he is therefore entitled to a new trial. This holding is based on trial counsel's failure to object to the State's numerous references to Coleman's post-*Miranda* silence, which constituted deficient performance, and the substantial possibility that Coleman suffered prejudice as a result of the deficiency.

## FACTUAL AND PROCEDURAL HISTORY

The State charged Petitioner in the Circuit Court for Baltimore County with (1) first degree murder, and (2) conspiracy to commit first degree murder, in the death of Quatrina Johnson. Quatrina Johnson was the foster sister of Shaday McKinnon. McKinnon was involved in a sexual relationship with Jason Richards when she was 13 years old and he was 24. After McKinnon and Johnson's foster mother, Sheila Porter, found out about the relationship, Porter contacted the police, and Richards was charged with rape. Richards apparently decided that if someone were to kill McKinnon, he could avoid

prosecution for the crime, so he enlisted Coleman, as well as Eric Watkins and Michael Shelton, to help him.

On July 19, 2004, Richards went to McKinnon's house and persuaded her to run away with him to California; McKinnon asked Johnson to come along, and they both left with Richards and Watkins. The group was eventually joined by Shelton, Coleman, and Coleman's girlfriend, Sandra Atueyi. On the evening of July 20, 2004, the group drove two cars to Benjamin Franklin Middle School in Baltimore City, where Johnson was attacked by one of the men.[1] During the attack, Johnson, apparently, was hit on the head with a board, and then choked; the State and the defense theories differ as to who actually choked Johnson. Neither McKinnon nor Atueyi witnessed the attack. Johnson's body was then placed in the trunk of Watkins's car, and subsequently moved to another vehicle after discovering Watkins's car had a flat tire. The body was transported to Gwynnvale Park in Baltimore County, where Coleman and Shelton poured gasoline on the body and set it on fire. According to the autopsy, Johnson likely died from asphyxiation, although it was inconclusive as to the cause of the asphyxiation.[2] There was also a possibility that blunt force trauma to the head was the cause of death.

The issue before this Court specifically concerns the circumstances surrounding Coleman's arrest and subsequent questioning by police on July 29, 2004. Coleman was advised of his *Miranda*[3] rights twice before Detective Gary Childs of the

---

1. The trial record is unclear as to why McKinnon remained unharmed and Johnson was the victim.

2. According to the medical examiner's testimony, Johnson's asphyxiation was "most likely or suggestive of a choke hold." In response to a question on direct examination by the State, the medical examiner speculated that it is possible that "someone [who] was strangled to the point of unconsciousness and placed in a trunk, could [ ] be asphyxiated that way as well[.]"

3. *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 706 (1966) (holding that when a criminal suspect is in custody, before being subject to police interrogation he must be advised that he "has a right to remain silent, that any statement he does make

Baltimore County Police Department interrogated him. Coleman initially denied having any knowledge of the crime during his interview, but subsequently revealed that he was present and assisted in the cover up. Detective Childs, during his testimony at Coleman's trial in July 2005, read the interrogation statement into the record, and there were numerous instances where Coleman's decision to remain silent was noted. Excerpts from Detective Childs's testimony are reproduced below (emphasis added):

> State of Maryland: What did [Petitioner] tell you, Detective?
>
> Detective Childs: He was asked several times about the individual and when he knew she was dead. He denied at first any knowledge of seeing a dead girl or that he did anything for anybody.
>
> He stated the first time that, [t]he only thing I know is one of the girls hopped in my car.
>
> Coleman—we then asked him to talk to us about the other girl, the victim. Coleman said either she was—I said to Coleman, [e]ither she was dead when you first saw her or she was alive and you were involved in this. **He remained silent.**

After a brief interruption, the testimony continued as follows (emphasis added):

> State of Maryland: You stated that [Petitioner] made a statement in regards to the dead girl. What did you say to the Defendant?
>
> Detective Childs: I indicated to him that the girl was either dead when you first saw her, or she was alive and you were involved in her death. **At that point, Mr. Coleman remained very silent. He didn't say anything.**

These references to Coleman's post-*Miranda* silence persisted throughout Detective Childs's testimony, occurring approximately 30 times in total. In addition, Detective Childs com-

---

may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed").

mented in his testimony on Coleman's nonverbal behavior during questioning (emphasis added):

> Detective Childs: After being told that we believed in fact he did in fact find out something or see something when the girls got out of the car, **Coleman put his head in his hands and looked at the floor.**
>
> **After a moment of silence,** Coleman looked up and asked for a drink of water at 6:53.

Coleman's counsel did not object to any of this testimony at trial, nor did he file a motion *in limine* prior to the trial. In addition, Coleman did not testify at his trial.

The jury found Coleman guilty of first degree murder as well as conspiracy to commit first degree murder (*Coleman I*). The Circuit Court for Baltimore County sentenced Coleman on October 7, 2005, to life without parole for the first degree murder conviction and to life for the conspiracy conviction. The sentences are to be served consecutively. On appeal, the Court of Special Appeals affirmed the convictions and sentences in an unreported opinion. Coleman petitioned this Court for a writ of certiorari, which we denied on January 12, 2007.

Coleman next filed a petition for post-conviction relief in the Circuit Court for Baltimore County on August 27, 2009, alleging ineffective assistance of counsel (*Coleman II*). He contended that, in addition to failing to cross-examine a State's witness, his trial counsel failed to object at trial to the numerous references, in Detective Childs's testimony, to Coleman's post-*Miranda* silence. Coleman additionally asked that he be given the opportunity to file a belated Motion for Modification and/or a belated Application for Review of Sentence.

The post-conviction hearing was held on May 18, 2010. Only Coleman and his trial counsel testified at the post-conviction hearing. Coleman's testimony focused on whether he was adequately advised about his post-sentence rights to file a belated Motion for Modification and/or a belated Application for Review of Sentence. Coleman's trial counsel, in

addition to answering questions as to whether he advised Coleman as to his post-sentence rights and his decision not to cross-examine the State's witness, discussed his failure to object to the references to Coleman's silence. Trial Counsel admitted that he did not file a motion *in limine*, but stated that he did not remember why he made that decision. Additionally, he stated that he did not remember why he did not object to the references to Coleman's silence and that, as he understood the law, a defendant could not invoke his right to remain silent on a question by question basis. Moreover, he testified that his trial strategy was "accessory-after-the-fact," and that he felt that none of the answers Coleman gave to the Detective "hurt him," because he never admitted to killing the victim. Finally, he added that he does not like to object as often in a jury trial as he does in a court trial because he does not want the jury to think there is something "going on," and then form a bad impression of the attorney and client, but that he would "certainly object to something that [he] felt was important." Neither party contested trial counsel's testimony.

The Circuit Court, in a written opinion, denied Coleman's Petition for Post Conviction Relief. The trial judge first determined on the merits that trial counsel's failure to cross-examine the State's witness did not rise to the level of ineffective assistance of counsel. With regard to counsel's failure to object and whether that action can be attributed to ineffective assistance of counsel, the Circuit Court did not address the claim on the merits, determining instead that Coleman had waived that claim by not raising it at trial or on appeal. Finally, the trial judge found that Coleman's allegation that his counsel was ineffective for failing to file a Modification of Sentence was without merit because Coleman never made that request of his counsel, choosing to appeal instead.

Coleman then filed an Application for Leave to Appeal in the Court of Special Appeals, and the application was denied on January 26, 2012. On February 27, 2012, Coleman filed a motion for reconsideration of the denial of his Application for Leave to Appeal in the Court of Special Appeals, which was

granted. The intermediate appellate court further ordered that their earlier opinion be recalled. On reconsideration, the Court of Special Appeals found that the circuit court incorrectly determined that the ineffective assistance of counsel claim was waived. The court concluded, however, that Coleman's Application lacked merit because he was not prejudiced by the alleged errors, and then again denied his Application for Leave to Appeal.

Coleman filed a petition for a writ of certiorari with this Court, which we denied on August 21, 2012. After Coleman filed a motion for reconsideration of the denial of his petition, this Court issued a writ of certiorari on November 16, 2012, to review the Circuit Court's denial of post-conviction relief.

## I.

As a preliminary matter, in *Mosley v. State*, 378 Md. 548, 836 A.2d 678 (2003), we noted that "the adversarial process found in a post-conviction proceeding generally is the preferable method in order to evaluate counsel's performance, as it reveals facts, evidence, and testimony that may be unavailable to an appellate court using only the original trial record." 378 Md. at 562, 836 A.2d at 686 (citation omitted). *See also* Md.Code (2001, 2005 Cum.Supp.), § 7–102 of the Criminal Procedure Article.[4]

---

4. We note that in the instant case, the Court of Special Appeals ruled on the merits of the case, then denied the Application for Leave to Appeal, prior to this Court's grant of *certiorari*. According to Md.Code (2002, 2005 Cum.Supp., 2013 Repl.Vol.), § 12–202 of the Courts and Judicial Proceedings Article, "[a] review by way of certiorari may not be granted by the Court of Appeals in a case or proceeding in which the Court of Special Appeals has denied or granted: (1) Leave to prosecute an appeal in a post conviction proceeding." As determined in *Grayson v. State*, 354 Md. 1, 728 A.2d 1280 (1999), however, if "the decision[ ] of the Court of Special Appeals ... did not simply amount to [a] discretionary denial[ ] of leave to appeal, the limitation upon this Court's certiorari jurisdiction in § 12–202 of the Courts and Judicial Proceedings Article does not apply." 354 Md. at 12, 728 A.2d at 1285. Because the Court of Special Appeals did address the merits of the instant case, this Court, therefore, has jurisdiction, according to § 12–201 of the Courts and Judicial Proceedings Article.

The standard for an ineffective assistance of counsel claim is found in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which states that "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." 466 U.S. at 686, 104 S.Ct. at 2064, 80 L.Ed.2d at 692–93. This claim has two components. First, the "defendant must show that counsel's performance was deficient," which is proven by showing that "counsel's representation fell below an objective standard of reasonableness," and that such action was not pursued as a form of trial strategy. *Strickland,* 466 U.S. at 687–89, 104 S.Ct. at 2064–65, 80 L.Ed.2d at 693–95; *see also Oken v. State,* 343 Md. 256, 283–84, 681 A.2d 30, 43–44 (1996). Second, "the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. This Court has noted that the standard to be used is whether there is a "substantial or significant possibility that the verdict of the trier of fact would have been affected." *Bowers v. State,* 320 Md. 416, 426, 578 A.2d 734, 739 (1990) (quoting *Yorke v. State,* 315 Md. 578, 588, 556 A.2d 230, 235 (1989)); *see also Williams v. State,* 326 Md. 367, 375, 605 A.2d 103, 107 (1992).

As noted in *Strickland,* "both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact." 466 U.S. at 698, 104 S.Ct. at 2070, 80 L.Ed.2d at 700. Thus, in our independent examination of the case, we "re-weigh the facts as accepted in order to determine the ultimate mixed question of law and fact, namely, was there a violation of a constitutional right as claimed." *Harris v. State,* 303 Md. 685, 698, 496 A.2d 1074, 1080 (1985).

## II.

Coleman's main argument is that he received ineffective assistance of counsel when his trial counsel failed to object to

multiple instances during trial where the State brought into evidence that Coleman had remained silent in the face of police questioning after Coleman had been given *Miranda* warnings. Coleman contends that the references to his post-*Miranda* custodial silences found in Detective Childs's testimony were inadmissible and violated Coleman's Fifth Amendment rights. He also maintains that his trial counsel's failure to object to these silences was a serious error and constituted deficient performance by his attorney. *See Strickland,* 466 U.S. at 687–91, 104 S.Ct. at 2064–66, 80 L.Ed.2d at 693–96 (discussing the standard for effective attorney performance). Finally, Coleman argues that there is a substantial possibility that his trial counsel's error prejudiced Coleman in the eyes of the jury, due to the inherently prejudicial nature of the error, the fact that Coleman's credibility was essential to the defense, and because "the State's case against Mr. Coleman was otherwise non-existent." Coleman maintains that his convictions should therefore be reversed and that he is entitled to a new trial.

The State, in response, argues that Coleman has not satisfied his burden to prove that he was substantially prejudiced by his trial attorney's alleged error and that, if he has satisfied this burden, the issue should be remanded to the post-conviction court for further deliberation of Coleman's claim that his counsel's performance was deficient. The State maintains that, on the basis of the record as a whole, there is no "substantial possibility" that the jury's verdict would have been different had it not heard that Coleman was silent on several occasions or did not answer Detective Childs's questions, because Coleman's statements to the police, the testimony of other witnesses, and other evidence presented at trial preclude him from meeting his burden to show prejudice. The State also argues that it did not specifically use Coleman's silence against him as evidence of his consciousness of guilt.

As this case assesses whether a criminal defendant's Sixth Amendment right to effective assistance of counsel was violated when counsel failed to object to defendant's Fifth Amend-

ment right to remain silent, we begin by reviewing the applicable constitutional law.

■■ The Fifth Amendment, as applied to the states by the Fourteenth Amendment, guarantees an accused the right to invoke his privilege against self-incrimination. U.S. Const. amend. V, XIV. In *Michigan v. Tucker*, 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974), the United States Supreme Court explained that the procedural safeguards outlined in *Miranda v. Arizona*, 384 U.S. 436, 444–45, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 706–07 (1966), commonly referred to as the *Miranda* warnings, "provide practical reinforcement for the right against compulsory self-incrimination." *Tucker*, 417 U.S. at 444, 94 S.Ct. at 2364, 41 L.Ed.2d at 193. This Court noted in *Crosby v. State*, 366 Md. 518, 784 A.2d 1102 (2001):

> The protections bestowed upon citizens by the privilege against self-incrimination do not disappear once the accused initially waives his or her rights. An accused may invoke his or her rights at any time during questioning, or simply refuse to answer any question asked, and this silence cannot be used against him or her.

366 Md. at 529, 784 A.2d at 1108 (citation omitted). This dovetails with the Supreme Court's statement that although "the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings." *Doyle v. Ohio*, 426 U.S. 610, 618, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91, 98 (1976).

■ Additionally, "[e]vidence of post-arrest silence, after *Miranda* warnings are given, is inadmissible for any purpose," due to the fact that "[a]s a constitutional matter, allowing such evidence would be fundamentally unfair and a deprivation of due process." *Grier v. State*, 351 Md. 241, 258, 718 A.2d 211, 219 (1998) (citations and quotations omitted); *see also Doyle*, 426 U.S. at 618–19, 96 S.Ct. at 2245, 49 L.Ed.2d at 98 (holding that post-arrest, post-*Miranda* silence cannot be used for impeachment purposes); *Miranda*, 384 U.S. at 468 n. 37, 86 S.Ct. at 1624 n. 37, 16 L.Ed.2d at 720 n. 37 ("[I]t is impermissible to penalize an individual for exercising his Fifth Amend-

ment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that [the accused] stood mute or claimed his privilege in the face of accusation.").[5]

■ The Sixth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, and Article 21 of the Maryland Declaration of Rights guarantee criminal defendants the right to counsel. *See Mosley*, 378 Md. at 556, 836 A.2d at 682–83; *see also* U.S. Const. amend. VI, XIV; Md. Const. Decl. of Rts. art. 21. "The right to counsel is the right to the effective assistance of counsel ... [although counsel] can also deprive a defendant of the right to effective assistance, simply by failing to render *adequate* legal assistance." *Harris*, 303 Md. at 694, 496 A.2d at 1078 (emphasis added) (citations and quotations omitted). In *Strickland*, the Supreme Court examined a claim of "actual ineffectiveness" in light of the constitutional requirement's purpose, to ensure a fair trial. *See Harris*, 303 Md. at 694, 496 A.2d at 1078 (citing *Strickland*, 466 U.S. at 686, 104 S.Ct. at 2064, 80 L.Ed.2d at 692). As discussed above, the Supreme Court noted that in order to demonstrate that counsel's assistance was so defective as to require a reversal of a conviction, the defendant must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defendant. *See Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. "Otherwise, 'it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable.' " *Harris*, 303 Md. at 696, 496 A.2d at 1079 (citing *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693).

---

5. We note that the United States Supreme Court's recent ruling in *Salinas v. Texas,* — U.S. ——, 133 S.Ct. 2174, 186 L.Ed.2d 376 (2013) (holding that a witness must expressly assert the privilege against self-incrimination in a precustodial setting in order to benefit from that privilege) does not apply here because the instant case involves post-arrest, post-*Miranda* silence.

 We first address the performance prong to assess whether counsel's performance was deficient. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. We explained in *Mosley v. State* that

> the proper standard for attorney performance is that of reasonably effective assistance. "Prevailing professional norms" define what constitutes reasonably effective assistance, and all of the circumstances surrounding counsel's performance must be considered. Because it is "tempting" for both a defendant and a court to second-guess a counsel's conduct after conviction, courts must be "highly deferential" when they scrutinize counsel's performance. Reviewing courts must thus assume, until proven otherwise, that counsel's conduct fell within a broad range of reasonable professional judgment, and that counsel's conduct derived not from error but from trial strategy.

*Mosley,* 378 Md. at 557–58, 836 A.2d at 683 (citations and quotations omitted); *see also Harris,* 303 Md. at 698–99, 496 A.2d at 1080–81; *Strickland,* 466 U.S. at 687–91, 104 S.Ct. at 2064–66, 80 L.Ed.2d at 693–96.

As noted above, the post-conviction court concluded that Coleman's claim with regard to his trial counsel's failure to object was waived and therefore without merit. As such, the post-conviction court did not make any finding of error, strategy, or prejudice with respect to trial counsel's performance. The State maintains that in this Court, even if we agree that there is a substantial possibility that the jury verdict in the criminal case "would have been different had it not heard evidence of Coleman's intermittent silence, [his] claim of ineffective assistance must be remanded to the post-conviction court for a factual determination as to whether the absence of an objection might have been reasonable." We disagree with the State's premise that it is necessary to remand the case to the post-conviction court for a factual determination.

Whether trial counsel's performance was reasonable or even strategic is "a mixed question[ ] of law and fact." *Strickland,* 466 U.S. at 698, 104 S.Ct. at 2070, 80 L.Ed.2d at 700. In

*Harris,* this Court explained its function as a reviewing court for an ineffective assistance of counsel claim in a post-conviction proceeding. 303 Md. at 697–701, 496 A.2d at 1080–82. We explained:

> When a claim is based upon a violation of a constitutional right it is our obligation to make an independent constitutional appraisal from the entire record. But this Court is not a finder of facts; we do not judge the credibility of the witnesses nor do we initially weigh the evidence to determine the facts underlying the constitutional claim. It is the function of the trial court to ascertain the circumstances on which the constitutional claim is based. So, in making our independent appraisal, we accept the findings of the trial judge as to what are the underlying facts unless he is clearly in error. We then re-weigh the facts as accepted in order to determine the ultimate mixed question of law and fact, namely, was there a violation of a constitutional right as claimed.

*Harris,* 303 Md. at 697–98, 496 A.2d at 1080 (citations and quotations omitted).

Here, the post-conviction court did not address the first level facts. Similarly, in *Perry v. State,* 357 Md. 37, 741 A.2d 1162 (1999), the post-conviction court "made no finding[s] as to whether the deficiency fell below an objective standard of reasonableness considering prevailing professional norms." 357 Md. at 79, 741 A.2d at 1184. Although the post-conviction court in *Perry* "found as a fact that counsel's failure to lodge a timely objection to the wiretap evidence was not a matter of trial strategy or tactics but was instead the product of his failure to realize that Perry had a good basis for suppression- in the court's words, their 'ignorance of the law[,]' " the basis for that finding of fact was trial counsel's uncontroverted admission that he failed to timely pursue the suppression of certain exhibits and testimony relating to them. *Id.* The post-conviction court ultimately decided the ineffective assistance of counsel case based on the "prejudice" issue, concluding that "even if the [wiretap evidence] had been suppressed, there is not a reasonable probability or a substantial possibility, that

the verdict would have been different." *Perry,* 357 Md. at 53, 741 A.2d at 1171. The judgment of the post-conviction court, however, was reversed on appeal. *Perry,* 357 Md. at 87, 741 A.2d at 1189.

In the present case, trial counsel's testimony at the post-conviction hearing revealed the following:

Post-conviction Counsel: Do you [trial counsel] know why you didn't object when the police officer testified as to his silence after he had been advised of *Miranda?*

Trial Counsel: I don't remember exactly what I was thinking at this time. I mean, I can tell you that it was not my understanding of the law then that sort of question by question basis. You know the defendant in the beginning waived his right to speak to the detective, and then at some point later without saying—I don't want this to go on or I want an attorney, or I'm done—could invoke it on a question by question basis.

Post-conviction Counsel: Are you aware that is in fact the law?

Trial Counsel: I read your petition and spoken to—I'm aware of that, right. You allege that is the law, yes.

The parties do not dispute the underlying facts of this case, namely, that defense counsel did not object to the approximately thirty instances during Detective Childs's testimony where he referred to Coleman's post-*Miranda* silence. Moreover, trial counsel's admission at the post-conviction hearing that he was unaware that a defendant could invoke his right to remain silent on a question-by-question basis is uncontroverted. Under the circumstances, therefore, the post-conviction court's failure to address trial counsel's uncontroverted admission that he did not know that he could object to Detective Childs's references to Coleman's post-*Miranda* silence does not warrant a remand for further fact finding.

With regard to the reasonableness of trial counsel's failure to object, we note that in *Alston v. Garrison,* 720 F.2d 812 (4th Cir.1983) the United States Court of Appeals for the Fourth Circuit explained that "[s]ince 1976, when *Doyle v.*

*Ohio* was decided, the law has been clear that admitted evidence of post-arrest silence violates due process of law. Failure to oppose the admission of such evidence plainly falls beneath the range of competence demanded of attorneys in criminal cases." *Alston,* 720 F.2d at 817 (quotation omitted). In fact, "[f]ew mistakes by criminal defense are so grave as the failure to protest evidence that the defendant exercised his right to remain silent." *Alston,* 720 F.2d at 816 (citations omitted). We agree that in the present case, the failure to object to the State's numerous references to Coleman's silence is an obvious error regarding the defendant's Fifth Amendment rights and a reasonably competent attorney in this situation would have raised an objection.

To show deficient performance, however, the defendant must also show that counsel's actions were not the result of trial strategy. *See Harris,* 303 Md. at 697, 496 A.2d at 1080 (citations omitted) (explaining that to show deficient performance by counsel the defendant must "overcome the presumption that . . . the challenged action might be considered sound trial strategy"). Counsel makes a strategic trial decision when it is founded "upon adequate investigation and preparation." *See State v. Borchardt,* 396 Md. 586, 604, 914 A.2d 1126, 1136 (2007) (noting that "[b]efore deciding to act, or not to act, counsel must make a rational and informed decision on strategy and tactics based upon adequate investigation and preparation").

Trial counsel testified at the post-conviction hearing that he was unaware that he could object to the references to Coleman's silence under the principles of *Miranda.* We do not see how trial counsel's failure to object because of his ignorance of the law could possibly be seen as sound trial strategy or a strategic choice. Defense counsel's explanation as to why he did not object does not indicate that he made a rational and informed decision on strategy and tactic after "adequate investigation and preparation." *Borchardt,* 396 Md. at 604, 914 A.2d at 1136. Rather, the post-conviction hearing record reveals that trial counsel was not properly informed of the law,

whether by neglect or ignorance. *See Glover v. Miro*, 262 F.3d 268, 276 (4th Cir.2001) (finding deficient performance where trial counsel's failure to object to the court's action during trial was due to unfamiliarity with settled legal principles); *see also Huynh v. King*, 95 F.3d 1052, 1057 (11th Cir.1996) (noting that no reasonable attorney would forego the litigation of a meritorious claim in order to set up an issue for appeal or collateral review).

The State argues that we must remand this issue to assess whether counsel's conduct was reasonable or strategic. In doing so, the State references trial counsel's testimony during his cross-examination at the post-conviction hearing, where he explained that his general approach to jury trials is to object less frequently than in bench trials, because "I feel if you like object, object, object, object, the jury will get a bad impression of me, and it will rub off on the impression of my clients. So I would certainly object to something that I felt was important, but there may be minor objections like a leading question here and there that I might not say anything." The argument that trial counsel's conduct was therefore strategic, however, does not require additional findings of fact. Trial counsel's testimony does not indicate any particular trial strategy founded upon "adequate investigation and preparation," especially after trial counsel expressly admitted that he was unaware of the law with regard to whether he could object on the *Miranda* issue. *See Borchardt*, 396 Md. at 604, 914 A.2d at 1136 (citing *Strickland*, 466 U.S. at 690–91, 104 S.Ct. at 2066, 80 L.Ed.2d at 695–96). Nor does this general approach to jury trials explain why trial counsel did not file a motion *in limine* prior to trial or request a continuing objection.

Additionally, the State contends that trial counsel's strategy in the case was "accessory-after-the-fact" and that a first-level factual determination as to the reasonableness of counsel's conduct in failing to object is necessary. Although it is uncontroverted that trial counsel explained that his theory of the case was "accessory-after-the fact," it is unclear how this theory would affect his failure to object to the references to Coleman's silence, especially after counsel admitted that he

was unaware of the law with regard to this issue. Trial counsel further explained that, given his theory of the case, he did not feel that any "of the *answers* [Coleman] gave ... hurt him" because Coleman never admitted to killing the victim. Such testimony does not even relate to the Detective's references to Coleman's silence during trial and trial counsel's failure to object. As such, trial counsel's testimony in no way requires this Court to remand the issue for additional fact finding as to the reasons for counsel's failure to object.

Even if trial counsel believed that his failure to object was a trial tactic, we conclude, as other courts have, that the failure to object, not unlike the attorneys involved in *Perry* who failed to "pursue a timely motion to suppress the evidence, fell significantly below the objective standard of reasonableness and that the first prong of *Strickland* was therefore established." *Perry*, 357 Md. at 79, 741 A.2d at 1185. In other words, "[t]here can be little doubt in this case that the omission to move timely to suppress the evidence, the almost certain effect of which was a waiver of any objection to the evidence, satisfied [the deficiency prong of the *Strickland*] test." *Perry*, 357 Md. at 79, 741 A.2d at 1185. We hold, therefore, that counsel's representation in the present case, in failing to object to the references to Coleman's silence, was deficient because it fell below the range of competence demanded of attorneys in criminal cases and was not pursued in furtherance of sound trial strategy.

### III.

As to the prejudice prong of *Strickland*, which addresses whether an attorney's deficient performance prejudiced the defendant, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698; *see also Taylor v. State*, 428 Md. 386, 399–400, 51 A.3d 655, 662 (2012). In *Oken*, we explained that the petitioner must show "that there is a

substantial possibility that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 343 Md. at 284, 681 A.2d at 44. This Court has noted that "[a] proper analysis of prejudice ... should not focus solely on an outcome determination, but should consider 'whether the result of the proceeding was fundamentally unfair or unreliable.'" *Oken,* 343 Md. at 284, 681 A.2d at 44 (quoting *Lockhart v. Fretwell,* 506 U.S. 364, 369, 113 S.Ct. 838, 842, 122 L.Ed.2d 180, 189 (1993)); *see also Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693 (explaining that, in determining prejudice, it is important to consider whether the trial's result was reliable).

We note that in *Perry,* we rejected, as a matter of independent Maryland law under Article 21 of the Declaration of Rights, "the notion that a defendant is never prejudiced under a *Strickland*-type analysis when reliable, though legally inadmissible evidence is admitted against him or her." *Perry,* 357 Md. at 85, 741 A.2d at 1188. We explained:

> The most fundamental underpinning of our criminal justice system, upon which most, if not all, other rights rest, is that a defendant is presumed to be innocent, and it is the obligation of the State to prove guilt, upon proper procedure and by admissible evidence, beyond a reasonable doubt. It is not a 'windfall' when counsel succeeds in suppressing evidence that, for whatever reason, is inadmissible. That is precisely what counsel is there to do—to make the State prove its case by legally admissible evidence. It is difficult for us to comprehend either a logical or a practical basis for a conclusion that the defendant is not prejudiced, as a matter of law and without regard to any other circumstance, when counsel fails in that very basic responsibility.

*Perry,* 357 Md. at 86, 741 A.2d at 1189.

Our focus, therefore, under the Sixth Amendment and, independently, under Article 21 of the Maryland Declaration of Rights, must be on whether trial counsel's failure to object to the State's approximately thirty references to Coleman's silence during questioning as stipulated through the Detec-

tive's testimony at trial "so upset the adversarial balance between defense and prosecution that the trial was unfair and the verdict rendered suspect." *Perry*, 357 Md. at 87, 741 A.2d at 1189 (citations and quotations omitted). There are several factors specific to the instant case that, taken together, indicate that there is a "substantial possibility" that the outcome of this case would have been different absent counsel's errors. For example, we consider the frequency of the references to Coleman's post-*Miranda* silence. Detective Childs's testimony refers to this silence not once or twice, but approximately thirty times. The cumulative effect of these instances only exacerbates the potential for prejudice to Coleman. *See Williams v. Zahradnick*, 632 F.2d 353, 363 n. 13 (4th Cir.1980) ("One reference is less damaging than four; a lengthy colloquy is more prejudicial than a brief one."); *Bowers*, 320 Md. at 436, 578 A.2d at 744 (citations omitted) (noting that "[e]ven when individual errors may not be sufficient to cross the threshold [of ineffective assistance], their cumulative effect may be"). After listening to numerous references to Coleman's post-*Miranda* silence, a jury would likely view the continued silence in response to the Detective's questions as a sign of Coleman's guilt.

In addition, not only was this silence mentioned when it should not have been, but also, in several instances, it was editorialized by Detective Childs. During his testimony, Detective Childs enhanced his statement about Coleman's silence in response to his questioning with commentary describing Coleman as "very silent," that he refused to answer a question and took a "long pause," and that "Coleman put[ ] his head in his hands and stay[ed] in that position for a long time [in response to a question]." This added commentary intensifies the prejudicial effect of the silence because it makes it appear as though Coleman might have been searching for an answer that would not hurt him. *See Alston*, 720 F.2d at 816 (noting that evidence of a defendant's post-*Miranda* silence "plants in the mind of the jury the dark suspicion that the defendant had something to hide, and that any alibi which is subsequently proffered is pure fabrication"). The State argues that even

though the Detective noted Coleman's silence at points in the interrogation, this is of no moment because Coleman answered all of the questions at some point over the course of the very lengthy interrogation. This does not change the fact that mentioning and editorializing Coleman's silence casts doubt on the reliability of his eventual answers, however. This is so because it is the silence itself, and any inferences drawn from it, that is harmful to Coleman, and these harmful inferences are what the principles underlying *Miranda* strive to protect.[6]

Further, several instances where Coleman's post-*Miranda* silence was mentioned came after questions that went to the heart of his involvement in the murder. For example, toward the beginning of Detective Childs's testimony, he stated, "I indicated to [Coleman] that the girl was either dead when you first saw her, or she was alive and you were involved in her death. **At that point Mr. Coleman remained *very* silent. He didn't say anything.**" (Emphasis added).[7] As noted in *Strickland,* "[s]ome errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect." *Strickland,* 466 U.S. at 695–96, 104 S.Ct. at 2069, 80 L.Ed.2d at 698–99. Evidence of silence here, at such an early juncture in the Detective's testimony, and in response to a question revolving around Coleman's involvement in the murder, clouds the rest of his statement. This is an instance where the inference of guilt to be drawn from Coleman's silence is pervasive and puts Coleman's whole story and his credibility into question.

---

**6.** We note that even the State concedes that "a defendant's silence or refusal to answer questions during a post-*Miranda* statement is inadmissable."

**7.** Another example of such an instance occurs later in Detective Childs's testimony, where he states that he said to Coleman, "You saw the fight. You went over there, didn't you?" The Detective then notes that Coleman had "[n]o answer," then "[Coleman] put[ ] he [sic] head in his hands again and look[ed] at the floor." After this, the Detective asked Coleman, "Who did this?," then stated, "No answer [from Coleman]. Still looking at the floor."

It is also important to stress the fact that Coleman's theory of the case was accessory-after-the-fact, making Coleman's version of the events and his credibility an essential factor for his defense. During the criminal trial, the jury heard approximately thirty references to Coleman's silence during police questioning. Coleman did not personally testify at trial, so his statement to the police, as read into evidence by Detective Childs, was the only way the trial court heard his version of the events. It was also the only vehicle through which the jury judged his credibility and the credibility of his story. Counsel's error in not objecting to the references to Coleman's post-*Miranda* silence negatively affected Coleman's credibility because it gave the jury the opportunity to question why he may have been silent in those instances. *See Gravley v. Mills,* 87 F.3d 779, 785–86, 789 (6th Cir.1996) (noting that, in a situation where defendant's post-arrest silence was introduced and commented upon by the State, "[c]ounsel's failure to recognize that the prosecution was continually making improper comments concerning [defendant's] post-arrest silence was a critical error, especially since [defendant's] credibility was such an important issue in the case"). In addition, of the witnesses that testified at Coleman's trial, the only two that alleged they had actual knowledge of Coleman's involvement in the murder itself were co-defendants that testified as a result of plea agreements with the State.[8] The fact that the witnesses were each also involved in the events surrounding the murder puts at least some doubt on the credibility of their stories. Consequently, the potential for any prejudice suffered by Coleman as a result of the references to his silence would have been exacerbated.[9]

---

**8.** Michael Shelton and Eric Watkins testified at Coleman's original trial; Jason Richards did not testify. Although Shaday McKinnon and Sandra Atueyi also testified at Coleman's criminal trial, they were not within viewing distance of the murder.

**9.** The State also contends that "the jury's notes demonstrate that the jury's concern during its deliberations focused on Coleman's role as an aider and abettor, not as the person who choked Johnson," and that these notes support the State's theory that there is no substantial

We also note that in the present case, as in *Alston*, because Coleman's trial counsel "failed to object or to move to strike, the trial judge was never requested to give curative instructions. Nor did the trial judge give such instructions *sua sponte.*" *Alston*, 720 F.2d at 818. Thus, there was no opportunity for any potential prejudice to be cured at the trial itself. Taken together, these factors indicate that there is a "substantial or significant possibility" that trial counsel's error prejudiced Coleman.[10]

Moreover, as discussed by the Fourth Circuit, because the improper admission of evidence of post-*Miranda* silence "is so egregious and so inherently prejudicial, reversal is the norm rather than the exception." *Alston*, 720 F.2d at 817 (quoting *Zahradnick*, 632 F.2d at 363). While this error is not prejudicial in and of itself in this case, counsel's failure to object to the references to Coleman's post-*Miranda* silence is inherently problematic because it goes to a substantial constitutional right. *See Younie v. State*, 272 Md. 233, 246–47, 322 A.2d 211, 218 (1974) (noting, albeit under a harmless error standard, the

---

possibility that the jury's verdict would have been different if it had not heard the references to Coleman's post-*Miranda* silence. Some of the questions posed by the jury during its deliberations include: "Which charge goes hand in hand with aid and abetting?" (Jury Note 2); "Does the law state that if a person is physically present during a murder, whether they participate or not, does that make them guilty of 1st or 2nd degree murder?" (Jury Note 3); and "If a jury member agrees that the defendant aided & abetted in this murder but believes the defendant is not guilty of murder even though according to your answer to our last question we were told that 'a person who aids & abets is as guilty as the actual perpetrator' what do we do?" (Jury Note 4). We infer from the jury notes that at least some members of the jury struggled as to Coleman's exact role in the murder, making prejudice with regard to Coleman's silence more likely.

**10.** We note that other courts have examined similar factors when analyzing the effect of the use of a defendant's post-*Miranda* silence. *See, e.g., Alston*, 720 F.2d at 817–18 (weighing such factors as "[t]he use to which the prosecution puts the post-arrest silence[;] [w]ho elected to pursue the line of questioning[;] [t]he quantum of other evidence indicative of guilt[;] [t]he intensity and frequency of the reference[; and] [t]he availability to the trial judge of an opportunity to grant a motion for mistrial or to give curative instructions"); *Williams v. Zahradnick*, 632 F.2d 353, 361–62 (4th Cir.1980) (same).

seriousness of an error that "goes to a substantial constitutional right," such as the Fifth or Sixth Amendment). As this Court articulated in *Grier*, "[t]he prejudice to a defendant resulting from reference to his silence is often substantial. As the Fifth Circuit observed, 'we would be naive if we failed to recognize that most laymen view an assertion of the Fifth Amendment privilege as a badge of guilt.' " *Grier*, 351 Md. at 263, 718 A.2d at 222 (quoting *Walker v. United States*, 404 F.2d 900, 903 (5th Cir.1968)).

Under the Sixth Amendment and, independently, under Article 21, we hold that the admission of Coleman's post-*Miranda* silence "so upset the adversarial balance between defense and prosecution that the trial was unfair and the verdict rendered suspect." *Perry*, 357 Md. at 87, 741 A.2d at 1189 (citations and quotations omitted). In the present case, "there is a substantial possibility that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Oken*, 343 Md. at 284, 681 A.2d at 44.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REMAND THE CASE TO THE CIRCUIT COURT FOR BALTIMORE COUNTY FOR A NEW TRIAL. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY BALTIMORE COUNTY.**