621 A.2d 910

**Daniel Harlin LOVE**

v.

**STATE of Maryland.**

**No. 919, Sept. Term, 1992.**

Court of Special Appeals of Maryland.

Feb. 26, 1993.

Reconsideration Denied April 27, 1993.

422

Jason A. Shapiro (Howard E. Goldman, P.A., on the brief), Laurel, for appellant.

Thomas K. Clancy, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Alexander Williams, Jr., State's Atty. for Prince George's County, Upper Marlboro, on the brief), for appellee.

Argued before WILNER, C.J., MOYLAN, J., and JAMES S. GETTY, Judge (retired), Specially Assigned.

MOYLAN, Judge.

Every conceivable wrong occurring in the course of a criminal trial does not necessarily give rise to a corresponding remedy. *A fortiori*, it does not always trigger the particular remedy invoked by the defendant who has arguably suffered the wrong. The Motion for New Trial is one of the post-trial remedies. It is by no means, however, a never-failing panacea, available whenever and however outraged justice may beckon. It is designed to correct some, but not all, flaws that may have marred a trial. It is limited, moreover, by rigid filing deadlines and other formal constraints.

The appellant, Daniel Harlin Love, was originally convicted by a Prince George's County jury, presided over by Judge James P. Salmon, of 1) armed robbery, 2) robbery, 3) assault with intent to avoid lawful apprehension, and 4) carrying openly a dangerous weapon. The appellant was sentenced by Judge Salmon on October 4, 1989. After a variety of efforts at post-trial relief,[1] not here pertinent, the

---

1. A Motion to Reconsider the Sentences was filed on November 7, 1989 and denied on December 11, 1989. An appeal from the convictions was taken to this Court but subsequently dismissed. A post-conviction hearing judge granted a belated appeal. This Court then affirmed the convictions in an unpublished decision, *Love v. State*, 87

appellant filed a Motion for New Trial. Following a hearing on May 14, 1992, Judge Salmon denied the Motion, not because he wished to but because, under the circumstances, he concluded he had no choice. The appellant appeals that denial of his Motion for New Trial, contending that Judge Salmon erroneously misconstrued the corrective latitude available to him.

It is undisputed that on February 5, 1989, the appellant stole several items of clothing from a Sears store located in the Landover Mall. It is beyond serious challenge that the appellant assaulted (at least by swinging at them) one or two of the store's security agents on an adjacent parking lot in his attempt to avoid lawful apprehension. The thrust of the Motion for New Trial was that newly discovered evidence cast grave doubt on the jury's verdict that the appellant possessed a deadly weapon and that the convictions for 1) armed robbery and 2) the open carrying of a dangerous weapon represented a serious miscarriage of justice.

Two store security agents—Charles Edgar and Clarissa Hubbert—were involved in the attempted apprehension of the appellant. As reflected in his trial testimony, Charles Edgar's version of events placed a knife in the hands of the appellant. As reflected by her testimony at the hearing on the Motion for New Trial, Clarissa Hubbert's version of events was that no knife was involved. She, however, was not called, either by the State or by the defense, to testify at the appellant's trial. Notwithstanding the choice of a jury to hear the case, the trial itself was summary in the extreme. Charles Edgar was the only witness. His direct examination took up only nine pages in the trial transcript; his cross-examination, but two.

According to Charles Edgar's testimony, the appellant took an assortment of clothes to a dressing room, put all of

Md.App. 809 (1991). A Petition for a Writ of *Certiorari* was filed with the Court of Appeals and was granted. It was subsequently dismissed, on February 12, 1992, as having been improvidently granted. *Love v. State,* 325 Md. 419, 601 A.2d 141 (1992).

them on his body at one time, and then attempted, thus sartorially bloated and ballooned, to walk out of the store without paying for any of the merchandise. Both Edgar and Clarissa Hubbert observed what was happening and followed the appellant onto the parking lot. Edgar showed the appellant a badge and attempted to arrest him. The appellant stated he was not going to be arrested and swung his arm at the two guards. According to Edgar, the appellant's elbow hit Clarissa Hubbert in the face. (In her later testimony at the post-trial hearing, Ms. Hubbert stated that she ducked and was not hit.) A tussle ensued between Charles Edgar and the appellant. According to Edgar, he at one point tackled the appellant to the ground. (In her later testimony at the post-trial hearing, Ms. Hubbert stated that the appellant lost his balance but broke his fall with his hand and then regained balance without literally hitting the ground.)

As the appellant ran toward his car, he at one point reached into his pants. Edgar testified that he feared the appellant was going to produce a weapon but also testified that no weapon was in fact ultimately forthcoming at that time. The appellant then jumped into an automobile occupied by another individual. It was at that time, according to Edgar's testimony, that the appellant reached down and produced a "locked blade Buck-type knife." He described it as being nine or ten inches long. He stated that the appellant "waved the knife back and forth" in the direction of both himself and Ms. Hubbert.

This was the sum total of the testimony about the knife. It is contained on just two pages of the transcript. Indeed, the scant two pages of cross-examination of Charles Edgar by the defense did not probe or even allude to Edgar's testimony about the knife. The defense put on no case at all.

In her testimony at the hearing on the Motion for New Trial, Clarissa Hubbert stated that when the appellant jumped into the waiting automobile, both she and Charles Edgar were standing approximately twenty feet away with

the same ability to observe the appellant's actions. She testified emphatically that she never saw a knife at any time. These contradictory versions of events, primarily with respect to the presence of the knife, between the witness who testified at trial and the potential witness who did not was the exclusive predicate for the appellant's Motion for New Trial.

For the review at the appellate level of a decision of a trial judge either to grant or to deny a new trial motion, the observations of Judge Digges in *Carlile v. Two Guys*, 264 Md. 475, 477–478, 287 A.2d 31 (1972), provide the proper perspective:

> "[A]ny hope for success on these claimed instances of error is misguided. There is probably no principle of law that rests on more decisions of this Court than the concept that a trial judge's granting or refusing a new trial—fully, partially, conditionally, or otherwise—is not reviewable on appeal except under the most extraordinary or compelling circumstances. *This is true even though the trial judge's decision is based on mistake or erroneous conclusions of law* or fact. Our adherence to this rule is unwavering and we do not find any extraordinary or compelling circumstances in the present case which would permit a review. In fact, *this Court, in its long history, has never found such circumstances to exist.*" (emphasis supplied).

The Motion for New Trial in a criminal case, recognized by Md.Ann.Code art. 27, § 594 (1992), is controlled by the provisions of Maryland Rule 4–331. The Motion is available on three progressively narrower sets of grounds but over the course of three progressively longer time periods. The shortest of time periods but the broadest of predicates is that provided by subsection (a):

> "**Within Ten Days of Verdict.**—On motion of the defendant filed within ten days after a verdict, the court, in the interest of justice, may order a new trial."

■ The list of possible grounds for the granting of a new trial by the trial judge within ten days of the verdict is virtually open-ended. In *State v. Devers and Webster*, 260 Md. 360, 374, 272 A.2d 794 (1971), the Court of Appeals quoted from Hochheimer, *The Law of Crimes and Criminal Procedure* § 184 at 209–210 (2d ed. 1904), in setting out an illustrative list of possible grounds:

"The principal grounds for granting a new trial are, that the verdict was contrary to the evidence; newly discovered evidence; accident and surprise; misconduct of jurors or the officer having them in charge; bias and disqualification of jurors (disqualification not entitling to a new trial, however, if there was opportunity to challenge); misconduct or error of the judge; fraud or misconduct of the prosecution, *e.g.*, abuse of argument."

Since that decision in 1971, the grounds for a new trial under this subsection have, indeed, been further expanded. It was the holding of *State v. Devers and Webster* that a new trial could be granted on grounds of evidentiary insufficiency only in the case where the evidence was so legally insufficient, as a matter of law, that it could not, even if believed totally and given maximum weight, support the verdict. Since that time, the decision in the case of *In re Petition for Writ of Prohibition*, 312 Md. 280, 539 A.2d 664 (1988), has overruled that limiting provision of *State v. Devers and Webster* and empowered the trial judge to grant a new trial not simply when the evidence is legally insufficient as a matter of law but also when the verdict, in the judgment of the trial judge, is so against the weight of the evidence as to constitute a miscarriage of justice. *In re Petition for Writ of Prohibition*, 312 Md. at 326, 539 A.2d 664. This broader latitude is in keeping with the provision of subsection (a) that a judge may order a new trial "in the interest of justice."

■ This broad base for awarding a new trial is tightly circumscribed by the timeliness requirement that the Motion be filed "within ten days after a verdict." Indeed, until predecessor Maryland Rule 770 was amended in 1984, the

Motion was required to be filed within three days after the verdict. Trial judges, moreover, are not empowered to overlook the filing deadline. *State v. Tull,* 240 Md. 49, 52, 212 A.2d 729 (1965); *Giles v. State,* 231 Md. 387, 388, 190 A.2d 627 (1963); *Ware v. State,* 3 Md.App. 62, 65–66, 237 A.2d 526 (1968).

In the case now before us, it is not subsection (a) on which the appellant relies. It would, of course, be unavailable to him because the verdict in this case was rendered on September 5, 1989 and the Motion for New Trial was filed on April 22, 1992.

A narrower base for either revising a judgment or granting a new trial but one that is available over a longer period of time is that provided by subsection (b), which states, in pertinent part:

> **"Revisory Power.**—The court has revisory power and control over the judgment to set aside an unjust or improper verdict and grant a new trial:
>
> .    .    .    .    .
>
> (2) in the circuit courts, on motion filed within 90 days after its imposition of sentence.
> Thereafter, the court has revisory power and control over the judgment in case of fraud, mistake, or irregularity."

In contrast with subsection (a), this power in a trial judge to set aside a verdict is generally available for ninety days rather than for ten days. The triggering event, moreover, is a later one—the imposition of a sentence rather than the rendering of a verdict.

In the case now before us, it is not subsection (b) on which the appellant relies. The sentence in this case was imposed on October 4, 1989 and the Motion for New Trial was filed on April 22, 1992. This was, furthermore, not a case where the judgment was contaminated by "fraud, mistake, or irregularity."

It is the third of the new trial provisions that is before us in this case. This is a form of relief available over a far

more extended period of time, one year[2] rather than the ninety days available under subsection (b) or the ten days available under subsection (a). There is, moreover, the possibility of two triggering events—the imposition of sentence or the receipt of an appellate mandate—for the running of the one-year clock, and a defendant is permitted to take advantage of the more favorable. This form of relief, on the other hand, rests upon a far more narrow substantive base. Subsection (c) provides, in pertinent part:

> "**Newly Discovered Evidence.**—The court may grant a new trial or other appropriate relief *on the ground of newly discovered evidence which could not have been discovered by due diligence in time to move for a new trial pursuant to section (a) of this Rule:*
>
> .  .  .  .  .
>
> (2) in the circuit courts, on motion filed within one year after its imposition of sentence or its receipt of a mandate issued by the Court of Appeals or the [Court] of Special Appeals, whichever is later." (emphasis supplied).

Let it be carefully noted that the exclusive predicate for new trial relief under subsection (c) is not merely "newly discovered evidence." It is, rather, "newly discovered evidence which could not have been discovered by due diligence." Even if, for stylistic reasons, we occasionally resort to the convenient shorthand form of "newly discovered evidence," it is nonetheless implicit that an indispensable part of the definitional predicate for this form of relief is the further and invariable *proviso:* "which could not have been discovered by due diligence."

There has been almost no analysis of this sub-variety of new trial relief in the Maryland case law. *Jones v. State,* 16 Md.App. 472, 477, 298 A.2d 483, *cert. denied* 268 Md. 750

---

2. Under predecessor Rule 770, the availability of new trial relief on the ground of newly discovered evidence had originally been limited to a period of ninety days following the later of the two possible triggering events. The 1978 amendment of the Rule, however, lengthened the availability period to one year.

(1973), has been virtually the Alpha and the Omega of local authority:

> "There must ordinarily be present and concur five verities, to wit: (a) The evidence must be in fact, newly discovered, i.e., discovered since the trial; (b) facts must be alleged from which the court may infer diligence on the part of the movant; (c) the evidence relied on, must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal."

That discussion, moreover, is simply a quotation taken from *Johnson v. United States*, 32 F.2d 127, 130 (8th Cir.1929).

We caution against further reliance upon *Jones v. State's* quotation from a 1929 8th Circuit decision as the litmus test for a claim of newly discovered evidence. It does convey the general flavor of the subject, but it is flawed in several regards.

■ For starters, its statements of law are not completely accurate. To qualify as "newly discovered evidence" under the provisions of Rule 4–331(c), it is not enough, as the quotation states, that the evidence have been "discovered since the trial," *Jones*, 16 Md.App. at 477, 298 A.2d 483; it is required, by the very terms of the Maryland Rule, that the evidence have been discovered more than ten days after a verdict so that it was no longer timely "to move for a new trial pursuant to section (a) of this Rule." Indeed, Maryland's pertinent time period of ten days following a verdict might well expire before the actual termination (including sentencing) of a trial, so that newly discovered evidence within the contemplation of Rule 4–331(c) would not satisfy the definition according to *Jones v. State*.

■ Neither is it precise phraseology for the quotation from *Jones v. State* to assert that facts must be "alleged" from which the court may infer diligence on the part of the movant. *Jones*, 16 Md.App. at 477, 298 A.2d 483. Allega-

tion is not the critical criterion. The moving party must *establish* to the satisfaction of the court that he acted with due diligence, quite aside from alleging it. The act of alleging is really beside the point.

■ No exception can be taken to the next two statements from the quotation that the evidence "must be material" and that it "must not be merely cumulative or impeaching." *Id.* The final sub-criterion in the quotation is the requirement that "the newly discovered evidence would probably produce an acquittal." *Id.* That is not now (if it ever was) good Maryland law. It is an accurate statement, however, of the majority view in the United States, generally known as "the *Berry* test," taken from *Berry v. Georgia*, 10 Ga. 511, 526–527 (1851). The more lenient test from a defendant's point of view, simply requiring that the newly discovered evidence "might" produce a different result, was known as "the *Larrison* test," taken from the case of *Larrison v. United States*, 24 F.2d 82 (7th Cir.1928). In *Stevenson v. State*, 299 Md. 297, 301–302, 473 A.2d 450 (1984), the Court of Appeals concluded that it "need not decide which standard should apply." *See also* Nicole Porter, *Note*, 14 U.Balt.L.Rev. 595 (1985). In *Yorke v. State*, 315 Md. 578, 556 A.2d 230 (1989), however, the Court of Appeals opted to adopt an intermediate standard that fell somewhere between the *Berry* test and the *Larrison* test. It stated:

> "We appreciate that it is impossible to formulate a litmus type test that would come up with a 'yea' or 'nay' as to whether the new evidence would change the verdict. We favor, however, a standard that falls between 'probable,' which is less demanding than 'beyond a reasonable doubt,' and 'might' which is less stringent than probable. We think that a workable standard is:
>
> > The newly discovered evidence may well have produced a different result, that is, there was a substantial or significant possibility that the verdict of the trier of fact would have been affected."

*Yorke*, 315 Md. at 588, 556 A.2d 230. In three of five regards, then, *Jones v. State* is an inaccurate statement of Maryland law. Bench and bar are exceedingly ill-advised to continue to refer to it.

■ An even more telling indictment of the *Jones v. State* quotation from *Johnson v. United States*, is that, quite aside from its at-times erroneous and at-times imprecise statements of what it alleges to be the pertinent legal criteria, it is poorly organized in terms of conveying any ultimate message. It is not the case that there "must ordinarily be present and concur five verities." *Jones*, 16 Md.App. at 477, 298 A.2d 483. It is rather the case that what it refers to as "(a)" and "(b)" are both indivisible aspects of the necessary predicate for any new trial relief based upon "newly discovered evidence." Unless and until there is found to be "newly discovered evidence which could not have been discovered by due diligence," one does not weigh its significance. It is only when this definitional predicate has been established that the provisions of Rule 4–331(c) even become involved. Without this definitional predicate, the relief provided by subsection (c) is not available, no matter how compelling the cry of outraged justice may be. Some other relief may be appropriate but it is not, by definition, this form of relief.

■ What the *Jones v. State* quotation from *Johnson v. United States* refers to as "verities" "(c)," "(d)," and "(e)" are considerations of a lesser order. Even when a defendant has satisfied the trial judge that there is, indeed, "newly discovered evidence which could not have been discovered by due diligence," a new trial does not automatically follow. There must be some further evidentiary assessments. It is first required that the newly discovered evidence be material. *Stevenson v. State*, 299 Md. at 301–302, 473 A.2d 450. That material newly discovered evidence, moreover, must be more than "merely cumulative or impeaching." Even when both of these criteria are satisfied, the trial judge must go· on to assess the probable impact of such newly discovered evidence. As now re-

quired by *Yorke v. State,* the trial judge must find that there is "a substantial or significant possibility that the verdict of the trier of fact would have been affected" by the absence of the newly discovered evidence, to wit, that the "newly discovered evidence may well have produced a different result." *Yorke,* 315 Md. at 588, 556 A.2d 230.

█ If there had been in this case "newly discovered evidence which could not have been discovered by due diligence," the subcriteria for assessing evidentiary significance and forecasting possible impact would have been readily satisfied. The testimony of Clarissa Hubbert would have been indisputably material. When a defendant is being tried for robbery with *a dangerous weapon* and for carrying openly *a dangerous weapon,* testimony strongly suggesting that there was no dangerous weapon would be as material as material could ever be. Judge Salmon found that such evidence would have been material. Were it at all pertinent, we would fully concur.

It is further required that such evidence be more than merely cumulative or impeaching. There is no suggestion in this case that it was "cumulative." Although by contradicting the inculpatory testimony of Charles Edgar, it *ipso facto* was impeaching of that testimony, that self-evident aspect of it would not disqualify otherwise material exculpatory evidence of its pivotal materiality. The case law suggests an obvious difference between "impeaching" and "merely impeaching." The latter category would embrace such things as collateral impeachment and peripheral contradiction. Otherwise, no newly discovered evidence would ever qualify, for the most critical exculpatory evidence always is "impeaching" of the State's case. Judge Salmon found that Clarissa Hubbert's testimony in this case was not "merely impeaching." Again, were it at all pertinent, we would concur.

Judge Salmon went further and assessed the likely impact that the newly discovered evidence would have had upon a fact finder. Rather than inquiring whether "there

was a substantial or significant possibility that the verdict of the trier of fact would have been affected," as now mandated by *Yorke v. State*, 315 Md. at 588, 556 A.2d 230, he applied the more forbidding test spelled out by *Jones v. State*, 16 Md.App. at 477, 298 A.2d 483, inquiring whether "the newly discovered evidence would *probably* produce an acquittal." (emphasis supplied). Judge Salmon concluded that the newly discovered evidence would have satisfied even that more forbidding standard:

"I want to put on the record my thought process in the case so if it is wrong, then he would have a right to appeal it, but, in other words, in case I'm wrong on that second element, and that is the due diligence element, then I will just say what I think on that. I think Ms. Hubbert is very credible, and I think that if she had testified at trial he probably would have been acquitted of Count 1 and Count 11 because she was in a position to see the knife and I couldn't see a jury finding him guilty beyond a reasonable doubt on those two. I think, as Mr. Foley says, that there probably wouldn't be an acquittal on Counts 3 and 5 based on Mrs. Hubbert's testimony.

In regard to sentencing, I will say what is true, and if it is something that the appellate courts think wrong, I will be glad to have them review it. The truth is that if I had heard Mrs. Hubbert's testimony when I sentenced Mr. Love, I wouldn't have given as much time as I gave when I gave it, but I didn't hear it ... As Mr. Shapiro has said, I probably wouldn't have given the same sentence that I did, and that is absolutely true, but there is nothing I can do about it jurisdictionally.

For those reasons the motion for new trial will be denied. I get the feeling that I'm not doing justice here."

Once again, were any of this at all pertinent, we would have no reason to disagree with Judge Salmon's conclusions.

In the last analysis, however, none of these weighing considerations are at all pertinent. Even given precisely the same evidentiary significance and precisely the same likely impact upon a fact finder, additional evidence that is

not newly discovered is *not* the same as additional evidence that *is* newly discovered. "Newly discovered evidence" within the contemplation of Maryland Rule 4–331(c) is, by definition, "evidence which could not have been discovered by due diligence in time to move for a new trial pursuant to section (a) of this Rule." This is the fatal flaw in the appellant's otherwise compelling contention.

It is undisputed that well in advance of trial, the defense requested the names and addresses of all witnesses whom the State intended to call. It is undisputed that the State supplied the names of both Charles Edgar and Clarissa Hubbert. The defense knew that Ms. Hubbert was one of two persons involved in the apprehension of the appellant. The address given for Ms. Hubbert was at her place of employment, the Sears and Roebuck store located at 2101 Brightseat Road in Landover. At all times pending trial, Ms. Hubbert was employed at that address. It is undisputed that she was not subpoenaed to testify by either the State or the defense. It is undisputed that she was neither contacted nor interviewed by anyone connected with the defense of this case.

On this critical issue, Judge Salmon ruled unequivocally that due diligence had not been demonstrated:

"Facts must be alleged from which the Court may infer due diligence on the part of the movant. The facts that are before me would show that the State's Attorney did provide the name of Mrs. Hubbert to the Defendant, and from all I can see from her testimony or anything else that is before me, no one from—no one representing the Defendant talked to her before the trial and I can't, as much as I would like to, I can't make an inference of due diligence based on the facts alleged."

We cannot say that Judge Salmon abused his discretion in finding the absence of due diligence. Given that finding, he had no choice but to deny the appellant's Motion for New Trial.

The appellant makes several efforts to wriggle out from under the foreclosing effect of not having interviewed Clarissa Hubbert and then calling her as a defense witness. He states that the Assistant Public Defender handling his case determined, as "the best trial tactic," to demur to the facts and to make three procedural arguments. The wriggle is unavailing. Even a good explanation for not having exercised due diligence is not the same thing as the actual exercise of that due diligence. It is the latter that is required, not the former. The modifying clause "which could not have been discovered by due diligence ..." is an *in rem* characterization of the evidence itself, not an *in personam* comment upon the lawyerly performance. The absence of due diligence in discovering a piece of evidence is not *ipso facto* the establishment of ineffective assistance of counsel, if sound trial strategy suggested that all available resources be expended in another direction. Conversely, effective assistance of counsel is not *ipso facto* the establishment of due diligence. The arguable absence of blameworthiness on the part of counsel does not transmute even understandable nondiligence into diligence. Although the exercise of diligence and the effective assistance of counsel unquestionably overlap, they are not necessarily coterminous.

The wriggle fails in yet another respect. Even assuming that the pursuit of an alternative trial strategy was good reason for not exploring more diligently the possibility of a defense upon the merits during the course of the trial, once the verdicts of guilty had been rendered it was obvious that the alternative strategy had failed. The time within which due diligence in developing exculpatory evidence was called for, however, had still not yet expired. Additional exculpatory evidence could at least have been urged upon the trial judge as a reason for granting a new trial under the provisions of Rule 4–331(a) for a period of ten days after the verdict. Under the looser standards of that subsection, a variety of rationales would be available to the judge, provided only that the granting of the new trial be deemed

"in the interest of justice." Trial strategy is no longer available to explain that incremental lapse. The appellant has advanced no reason why, once the alternative trial strategy had demonstrably failed, diligent efforts were not pursued within those first ten days when the strictures upon a Motion for New Trial were not nearly so daunting as they would become after the running of that ten-day grace period. Many arguably good reasons for granting a new trial under subsection (a) would necessarily fail under subsection (c). Subsection (c), by its very terms, demands to know whether due diligence was employed to discover new evidence in time to qualify for the more permissive largesse of subsection (a). Subsection (c) is concerned not with the diligent discovery of new evidence in time for trial, but with the diligent discovery of new evidence "in time to move for a new trial pursuant to section (a) of this Rule."

The appellant's last gasp is to quote *In re Petition for Writ of Prohibition*, 312 Md. 280, 326, 539 A.2d 664 (1988), and *Yorke v. State*, 315 Md. 578, 583, 556 A.2d 230 (1989), for the proposition that "it would be a miscarriage of justice to let the verdict stand." That failing gasp, however, has taken a colorful and appealing clause completely out of its originating context. It is, of course, subsection (a) and not subsection (c) that makes the granting of a new trial more generally available "in the interest of justice." *In re Petition for Writ of Prohibition* was an opinion discussing, and broadening, the basis for new trial relief under subsection (a). It had nothing to do with and did not discuss subsection (c), which is the only provision now before us. Under subsection (a), the Court in *In re Petition* ameliorated the earlier austerity of *State v. Devers and Webster*, 260 Md. 360, 272 A.2d 794 (1971), and legitimated the granting of a new trial not simply in those cases where the evidence of guilt was legally insufficient, as a matter of law, to support a verdict but also in those cases where, in the opinion of the trial judge, the verdict of guilt, albeit legally supportable, was nonetheless against the weight of the evidence. Even in such a case, however, the Court of Appeals urged caution

upon the trial judge. It was in this context that the clause was uttered that the appellant now transplants to a very different context:

"But a trial judge is not at liberty to set aside a verdict of guilt and to grant a new trial merely because the judge would have reached a result different from that of the jury's. Motions for new trial on the ground of weight of the evidence are not favored and should be granted only in exceptional cases, when the evidence preponderates so heavily against the verdict *that it would be a miscarriage of justice to let the verdict stand."* (emphasis supplied).

*In re Petition,* 312 Md. at 326, 539 A.2d 664.

The appellant's invocation of *Yorke v. State* is even more strained. Before going on to the very different issue, not here pertinent, before the Court in that case, Judge Orth began his opinion for the Court by providing a broad summary and historical survey of the law governing new trial motions. In the course of a general recapitulation, he quoted a long paragraph from *In re Petition for Writ of Prohibition* which coincidentally included the colorful clause now being invoked. *Yorke,* 315 Md. at 583, 556 A.2d 230. Neither case is authority for the proposition for which the appellant cites them.

Neither "the interest of justice" nor "the prevention of a miscarriage of justice" is a "trump" card available to a defendant to override his otherwise foreclosing failure, under subsection (c), to have exercised due diligence. Were it otherwise, some open-ended "interest of justice" might transform the very limited ground of relief available under subsection (c) into any other ground necessary "to prevent a miscarriage of justice." That is clearly not the case. Were it otherwise, some open-ended "interest of justice" might override subsection (c)'s requirement that a motion be filed within one year after the later of the triggering events. That also is clearly not the case. Under subsection (c), there are no "trump" cards. The rule calls for literal compliance.

To hold that the appellant is not entitled to new trial relief under Rule 4–331(c) is not to say that he is necessarily bereft of any possibility of relief. He may always file a post-conviction petition urging the ineffective assistance of counsel. We do not speculate as to what the result of such a petition might be. It would at least call upon the defense attorney to advance reasons for not exploring a possible defense. There is always, of course, the avenue of applying for a gubernatorial commutation of sentence. The granting of a motion for a new trial, however, is not available.

The appellant's second contention is that Judge Salmon erroneously declined to reconsider his sentence. It is clear under Maryland Rule 4–345 that a court, in the absence of fraud, mistake, or irregularity, only has revisory power over a legal sentence upon a motion filed within ninety days of its imposition. What the appellant somehow seems to be arguing is that Judge Salmon's acknowledgement, in ruling upon the new trial motion, that had he been aware of Clarissa Hubbert's testimony, he would have sentenced the appellant more leniently somehow creates a right to have his sentence reconsidered and modified downward. The short answer is that such reconsideration and modification is only permitted upon a motion filed within ninety days of imposition of sentence. The appellant did not satisfy that filing requirement.

JUDGMENTS AFFIRMED; COSTS TO BE PAID BY APPELLANT.