*Ronald Cornish v. State of Maryland*, No. 12, September Term, 2018. Opinion by Greene, J.

**CRIMINAL PROCEDURE – MARYLAND RULE 4-331 – NEWLY DISCOVERED EVIDENCE – PRIMA FACIE**

The Court of Appeals held that the facts alleged in Petitioner's Motion for New Trial on the grounds of Newly Discovered Evidence established a *prima facie* basis for granting a new trial.

**CRIMINAL PROCEDURE – MARYLAND RULE 4-331 – NEWLY DISCOVERED EVIDENCE – RIGHT TO A HEARING**

The Court of Appeals held that the Circuit Court erred when it denied Petitioner a hearing on his Rule 4-331 Motion for New Trial based on Newly Discovered Evidence.

Circuit Court for Baltimore City
Case No. 115363026
Argued: September 12, 2018

IN THE COURT OF APPEALS

OF MARYLAND

No. 12

September Term, 2018

_____

RONALD CORNISH

v.

STATE OF MARYLAND

_____

Barbera, C.J.
Greene,
Adkins,
McDonald,
Watts,
Hotten,
Getty,

JJ.

_____

Opinion by Greene, J.

_____

Filed: October 30, 2018

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document " authentic.



Suzanne C. Johnson, Acting Clerk

In this case, we consider under what circumstances a defendant has the right to a hearing upon filing a Maryland Rule 4-331(c) Motion for New Trial based on newly discovered evidence. More specifically, we must decide whether the trial judge was legally correct in denying Petitioner Ronald Cornish ("Mr. Cornish") a hearing under the Rule. Petitioner was charged and convicted of first degree murder, use of a firearm in the commission of a crime of violence, and other related offenses. Thereafter, Mr. Cornish was sentenced to life imprisonment plus twenty years. Approximately two weeks after his sentencing, Mr. Cornish filed a Motion for a New Trial under Md. Rule 4-331(c) ("Rule 4-331") based on newly discovered evidence. The Circuit Court for Baltimore City denied the motion for a new trial without a hearing. Thereafter, Mr. Cornish noted an appeal to the Court of Special Appeals, which upheld the Circuit Court's denial of Mr. Cornish's motion. The Court of Special Appeals held that the evidence being offered was not "newly discovered" for purposes of Rule 4-331(c). *Cornish v. State*, No. 2369, 2016 Term & No. 222, 2017 Term (Md. Ct. Spec. App., January 8, 2018). Before us, Mr. Cornish seeks a reversal of that judgment on the ground that his motion met the *prima facie* pleading requirement and, therefore, a hearing was required to determine the merits of his motion.

## FACTUAL & PROCEDURAL BACKGROUND

The events underlying Mr. Cornish's conviction of first degree murder and related offenses involved a drug deal gone awry. On November 8, 2012, Warren Boone ("Mr. Boone") was found dead. Through the investigation of his death, the police discovered that Mr. Boone sold marijuana and that he was planning a drug transaction with an individual known as "Black" on November 7, 2012. Police determined that "Black" was

Richard Pope ("Mr. Pope"). Mr. Pope had called Mr. Boone to ask if he wanted to buy marijuana from Mr. Cornish. Mr. Pope and Mr. Cornish met Mr. Boone at Bumper to Bumper, an auto body repair shop on Belvedere Avenue located in Baltimore City. Mr. Pope and Mr. Cornish got into Mr. Boone's car and Mr. Cornish directed Mr. Boone to an apartment complex.

According to Mr. Pope's testimony at trial, upon arriving at the complex and getting out of the car, he heard a struggle and two gunshots that led to Mr. Boone's death. He also testified to seeing a revolver. At that point, according to Mr. Pope, he "was more or less in shock. So [he] did whatever [Mr. Cornish] told [him] to do." Mr. Pope also testified that after the gunshots he was afraid and felt obligated to "follow through."

Mr. Pope then claimed that Mr. Cornish instructed Mr. Pope to help drag the body out of the car, which he did. Upon dragging the body into the woods, Mr. Pope and Mr. Cornish got into Mr. Boone's car and drove to Bessemer Avenue in Dundalk. The next day, Mr. Pope and Mr. Cornish drove Mr. Boone's car to his house which they burglarized. After leaving the house, Mr. Pope and Mr. Cornish drove by the crime scene and saw police had used tape to cordon off the area. They decided to get rid of Mr. Boone's car by setting it on fire and abandoning it in the woods in West Baltimore.

At trial, Mr. Pope acknowledged that, in his discussions with police, initially, he downplayed his involvement in the murder of Mr. Boone but that he later implicated himself in the events. For example, when the police first spoke to him in November 2012, and on a second occasion, he did not admit that he had been with Mr. Cornish when Mr. Boone was killed, when Mr. Boone's home was burglarized, or when Mr. Boone's car was

2

set on fire. At that time, Mr. Pope told the police that he had introduced Mr. Boone and Mr. Cornish and then left. At trial, Mr. Pope contradicted this statement and admitted to being with Mr. Cornish when Mr. Boone was killed and during the subsequent crimes. Upon being asked why he had suddenly decided to admit to being present during the crime, Mr. Pope said it was the "right thing to do."

Thereafter, on November 3, 2016, a jury of the Circuit Court for Baltimore City convicted Mr. Cornish. On January 9, 2017 a judge sentenced Mr. Cornish to life plus twenty years for first degree murder and an additional fifteen years concurrent for possession of a regulated firearm with a disqualifying conviction. Unknown to Mr. Cornish or his defense counsel, prior to the crimes that occurred on November 8, 2012 and during the Cornish trial, Mr. Pope was under investigation for various crimes. As a result of those investigations, and unknown to Mr. Cornish and his defense attorney, Mr. Pope gave certain statements to investigators that directly contradicted the testimony he gave at Mr. Cornish's trial with respect to the murder of Mr. Boone. Once Mr. Cornish learned of Mr. Pope's statements to investigators, Mr. Cornish filed a motion for new trial in the Circuit Court. His motion alleged that two statements made by Mr. Pope, one in May 2013 and another on December 9, 2016, constituted newly discovered evidence.

The May 2013 statement provided the following details. Mr. Pope, in referring to the Boone murder, said that "apparently," Mr. Cornish killed Mr. Boone two weeks after a bank robbery. In this interview, Mr. Pope maintained that he hooked up Mr. Boone and Mr. Cornish for a weed deal. He then indicated that he saw Mr. Cornish with Mr. Boone's car a few days later.

3

On the other hand, the December 2016 statement explained in detail why Mr. Pope decided, on the morning of Mr. Cornish's trial, to testify against Mr. Cornish. In December of 2016, William Kanwisher ("Mr. Kanwisher"), a staff investigator with the Federal Public Defender, interviewed Mr. Pope at the Roxbury Correctional Institution because he was a potential witness in the matter of *United States v. Ronald Eaton*, JFM 14-0584. Mr. Pope told Mr. Kanwisher that on the day of Mr. Cornish's trial, Det. Kershaw woke him up at 4:30 a.m., drove him around for five minutes, then confronted Mr. Pope with cell phone data that confirmed that he was at the scene of Mr. Boone's murder. Det. Kershaw then threatened to charge Mr. Pope with the murder if he did not testify.

According to Mr. Kanwisher's affidavit, on the morning of trial, Mr. Pope admitted that he was present at the time of Mr. Boone's murder and agreed to testify against Mr. Cornish on the condition that he receive immunity. Det. Kershaw called the Assistant State's Attorney to discuss immunity. Mr. Pope had intended not to testify, but upon Det. Kershaw's discussions with the Assistant State's Attorney about immunity, Mr. Pope testified at Mr. Cornish's trial, as detailed in the preceding paragraphs.

On January 26, 2017, Mr. Cornish filed a motion entitled "Motion for a New Trial Pursuant to Maryland Rule 4-331(b); 4-331(c) & *Brady v. Maryland*" and, after the State's reply, Mr. Cornish supplemented his motion. On March 15, 2017, the Circuit Court denied the motion without a hearing. Mr. Cornish appealed the denial to the Court of Special Appeals which held, in an unreported opinion, that the trial court did not err in denying the motion for new trial. The intermediate appellate court concluded, without further explanation, that Mr. Cornish did not establish a *prima facie* basis for granting a new trial.

4

The court assessed the merits of Mr. Cornish's pleading and concluded that "there was no substantial or significant possibility that the jury's verdict would have been affected." Finally, the Court of Special Appeals determined that Mr. Pope's change in his version of events on the day of trial "did not constitute 'newly discovered evidence[.]'"

This Court granted Mr. Cornish's petition for writ of certiorari on April 9, 2018. We granted *certiorari* to answer the following question:

> Where a criminal defendant has satisfied all the pleading requirements entitling him to a hearing on his motion for new trial pursuant to Md. Rule 4-331 (c) and (f) and the circuit court summarily denies the motion without a hearing, does an appellate court err in affirming the circuit court by ruling on the merits of the motion?

458 Md. 579, 183 A.3d 155 (2018).

## DISCUSSION

*Parties' Arguments*

Mr. Cornish contends that Mr. Pope's May 2013 and December 2016 statements constitute newly discovered evidence. Pursuant to Rule 4-331(c) and (f), Mr. Cornish suggests that he fulfilled the Rule's pleading requirements and that the Circuit Court was required to grant him a hearing on the merits of his motion. He posits that the statements established, on a *prima facie* basis, that the evidence was newly discovered, could not have been discovered by due diligence in time for a Rule 4-331(a) motion, and were material enough to affect the outcome of his trial. Furthermore, Mr. Cornish argues that the Court of Special Appeals, in affirming the trial court's decision, ruled on the merits of the motion as opposed to the sufficiency of the pleading. It is Mr. Cornish's position that, based on the pleading requirements, he is entitled to a hearing on his motion.

5

To the contrary, the State contends that Mr. Cornish did not fulfill the pleading requirements and, accordingly, is not entitled to a hearing on the merits of his motion. The State argues that the statements offered by Mr. Cornish are not "newly discovered" or material but are "merely impeaching and cumulative." If this Court were to hold that Mr. Cornish is entitled to a hearing on his Rule 4-331(c) motion, according to the State, that holding would contravene the intent of Rule 4-331(f) and its goal of judicial efficiency.

*Md. Rule 4-331*

Rule 4-331 pertains to motions for new trial. Mr. Cornish relied on subsection (c)(1) as the basis for his motion. A motion filed pursuant to subsection (c) must meet the requirements contained in subsection (e). Assuming the requirements of subsection (e) are met, the motion must *also* meet the requirements of subsection (f) in order to entitle petitioner to a hearing on the motion. In pertinent part, Rule 4-331 provides:

> **(c) Newly discovered evidence.** The court may grant a new trial or other appropriate relief on the ground of newly discovered evidence which could not have been discovered by due diligence in time to move for a new trial pursuant to section (a)[1] of this Rule:
>> (1) on motion filed within one year after the later of (A) the date the court imposed sentence or (B) the date the court received a mandate issued by the final appellate court to consider a direct appeal from the judgment or a belated appeal permitted as post conviction relief[.]
>
> *             *             *
>
> **(e) Form of motion.** A motion filed under this Rule shall
>> (1) be in writing,
>> (2) state in detail the grounds upon which it is based,

---

[1] Rule 4-331(a) provides, "**Within ten days of verdict**. On motion of the defendant filed within ten days after a verdict, the court, in the interest of justice, may order a new trial."

6

(3) if filed under section (c) of this Rule, describe the newly discovered evidence, and

(4) contain or be accompanied by a request for hearing if a hearing is sought.

**(f) Disposition.** The court may hold a hearing on any motion filed under this Rule. Subject to section (d)[2] of this Rule, the court shall hold a hearing on a motion filed under section (c) if a hearing was requested and the court finds that:

(1) if the motion was filed pursuant to subsection (c)(1) of this Rule, it was timely filed,

(2) the motion satisfies the requirements of section (e) of this Rule, and

(3) the movant has established a prima facie basis for granting a new trial[.]

*Whether a Movant is Entitled to a Hearing Pursuant to Rule 4-331*

At the outset, we note that both parties agree that a movant must allege facts on a "prima facie basis" to be entitled to a hearing under the Rule. *See* Rule 4-331(f). Because the trial court denied the motion without a hearing, we must determine if the pleading sufficiently established a *prima facie* case, thus warranting a hearing on the motion. The party moving for a new trial has the burden of establishing a *prima facie* case. The movant must provide evidence "[s]ufficient to establish a fact or raise a presumption . . . even though it may later be proved to be untrue[.]" *Black's Law Dictionary*, at 1382 (10th Ed. 2014). This Court has explained, "the phrase prima facie case may be used by courts to describe the plaintiff's burden of producing enough evidence to permit the trier of fact to

---

[2] Rule 4-331(d) pertains to DNA evidence and is not relevant to our analysis in the immediate case.

7

infer the fact at issue." *Stanley v. State*, 313 Md. 50, 60, 542 A.2d 1267, 1272 (1988) (internal quotations omitted).

Whether a "prima facie basis" has been established is a legal determination, and we, thus, review the trial court's decision *de novo*. *See State v. Hunt*, 443 Md. 238, 116 A.3d 477 (2015) (reviewing *de novo* the legal sufficiency of a petition for writ of actual innocence). In contrast, "decisions on the merits of requests for new trials based on newly discovered evidence, [] filed pursuant to Rule 4-331 . . . are committed to the hearing court's sound discretion." *Id.* at 248, 116 A.3d at 482. *Hunt* further states that a movant "is entitled to a hearing on the merits of the petition, provided the petition sufficiently pleads grounds for relief under the statute[.]" *Id.* at 250-51, 116 A.3d at 484. To meet this pleading burden, the "party has to allege facts that, if true, would establish the required fact, which, in turn, would ensure him, or her, the forum and the opportunity to establish that they are true." *Genies v. State*, 426 Md. 148, 181, n. 11, 43 A.3d 1007, 1027, n. 11 (2012) (Bell, C.J., dissenting).

The State suggests that our review of the trial court's action in this case should be abuse of discretion and points us to *Buck v. Cam's Broadloom Rugs, Inc.* 328 Md. 51, 57, 612 A.2d 1294, 1297 (1992) ("Ordinarily, a trial court's order denying a motion for a new trial will be reviewed on appeal if it is claimed that the trial court abused its discretion. However, an appellate court does not generally disturb the exercise of a trial court's discretion in denying a motion for a new trial." (citation omitted)). We would be inclined to agree with the State had the trial court granted the Petitioner a hearing. On the facts before us, however, the trial court did not grant Mr. Cornish a hearing.

8

Thus, we recognize the subtle yet important distinction that is crucial in our review of this case. Here, we review a trial court's decision regarding the legal sufficiency of alleged newly discovered evidence, per Rule 4-331(f), which requires that a pleading contain facts sufficient to meet a *prima facie* basis to entitle the movant to a hearing. The Circuit Court's Order in this case was silent as to a finding of a *prima facie* basis in Mr. Cornish's petition. We, thus, cannot say whether the Circuit Court denied Mr. Cornish's motion for failing to satisfy the *prima facie* pleading requirement, or for some other reason. Our review, therefore, of the trial judge's denial of Mr. Cornish's motion is limited to the judge's decision to deny Mr. Cornish a hearing. Accordingly, we do not reach the merits of Mr. Cornish's request for a new trial. *Compare State v. Hunt*, 443 Md. 238, 247, 116 A.3d 477, 482 (2015) ("[T]he standard of review when appellate courts consider the legal sufficiency of a petition for writ of actual innocence is *de novo*."), *with Douglas v. State*, 423 Md. 156, 188, 31 A.3d 250, 269 (2011) ("[D]ecisions on the merits of requests for new trials based on newly discovered evidence . . . are committed to the hearing court's sound discretion.").

*Requirements and Procedure of a Rule 4-331(c) Motion for New Trial*[3]

A motion for new trial filed pursuant to Rule 4-331(c) is filed for the purposes of obtaining a new trial on the grounds of newly discovered evidence. Prior to reaching the decision of whether to award the movant a new trial, the trial court must first decide if the movant is entitled to a hearing on his motion. Pursuant to Rule 4-331(f), the trial court

---

[3] The *prima facie* element of Rule 4-331(f)(3) was not a requirement for granting a hearing until the Rule was amended by Rules Order dated March 9, 2010, effective July 1, 2010.

*shall* grant the movant a hearing when a hearing is requested, the motion is timely filed, the motion satisfies the requirements of subsection (e) of the Rule, and the movant has established a *prima facie* basis for granting a new trial. Specifically, with respect to this last requirement, Rule 4-331(f)(3) provides that the movant must establish a *prima facie* basis that there is newly discovered evidence which could not have been discovered by due diligence in time to move for a new trial pursuant to sections (a) and (c) of Rule 4-331.

Other essential requirements have been delineated by case law. The evidence offered as newly discovered must be "material to the result and that inquiry is a threshold question." *Argyrou v. State*, 349 Md. 587, 601, 709 A.2d 1194, 1201 (1998) (quoting *Stevenson v. State*, 299 Md. 297, 302, 473 A.2d 450, 452 (1984)). That means that the newly discovered evidence must be more than "merely cumulative or impeaching." *Id.* (quoting *Love v. State*, 95 Md. App. 420, 621 A.2d 910 (1993)). The trial court must also determine that "[t]he newly discovered evidence may well have produced a different result, that is, there was a substantial or significant possibility that the verdict of the trier of fact would have been affected." *Id.* (quoting *Yorke v. State*, 315 Md. 578, 588, 556 A.2d 230, 235 (1989)). In other words, the new evidence must be material and the movant must have acted reasonably and in good faith to obtain the new evidence given the totality of the circumstances and facts known to him or her. Ultimately, however, to win on a motion for new trial, the trial judge must be persuaded that the new evidence may "produce a different result at a new trial." *Campbell v. State*, 373 Md. 637, 671-72, 821 A.2d 1, 21 (2003).

Our appellate review is limited to the facts pled in Mr. Cornish's motion for new trial so that we may determine whether Mr. Cornish met the *prima facie* threshold to entitle

10

him to a hearing on his motion. If Mr. Cornish's pleading satisfied the *prima facie* pleading requirement, then the hearing judge erred when she denied Mr. Cornish a hearing on his motion.

As noted earlier in this opinion, Black's Law Dictionary defines *prima facie* as "[s]ufficient to establish a fact or raise a presumption unless disproved or rebutted; based on what seems to be true on first examination, even though it may later be proved to be untrue[.]" *Black's Law Dictionary*, at 1382 (10th ed. 2014). For the purposes of pleading a *prima facie* case, the statements need not be proven to be true when pled, but the statements must establish a cause for relief if proved to be true. We have examined the *prima facie* threshold in the context of petitions for DNA testing pursuant to Md. Code, Criminal Procedure Article § 8-201 ("CP § 8-201"). In *Simms v. State*, for example, we reviewed whether Mr. Simms's petition was facially sufficient to warrant further review on the merits of the petition. 409 Md. 722, 976 A.2d 1012 (2009).

Not unlike the facts of the case before us, Mr. Simms's petition for postconviction DNA testing was denied without a hearing. *Simms*, 409 Md. at 724, 976 A.2d at 1014. At the time of Mr. Simms's trial, under CP § 8-201, a court was required to order DNA testing if (1) a reasonable probability existed that the DNA testing would produce exculpatory or mitigating evidence; and (2) the requested DNA test employed a method that was generally accepted within the relevant scientific community. *Id.* at 728-29, 976 A.2d at 1016. We stated that "[a] court therefore has no discretion to deny the petition summarily, if the petition makes out a *prima facie* case of entitlement to the testing sought." *Id.* at 731, 976 A.2d at 1018.

11

*Simms* involved the murder of Peter Williams and Belinda Baynor. *Id* at 724, 976 A.2d at 1014. Mr. Simms alleged that the State's case "consisted entirely [of] circumstantial evidence regarding his relationship [of] discord with Belinda M. Baynor and the selective DNA testing of clothing the assailant allegedly wore when the murders were committed." *Id.* at 725, 976 A.2d at 1014. Mr. Simms filed a "Motion for New Trial and Release of Evidence for DNA Testing." *Id.* He alleged at trial that neither he, nor Peter Williams, was a possible source of DNA found either on a jacket, belt, shoes, or pants that had been recovered. *Id.* at 726, 976 A.2d at 1015.

Mr. Simms next noted that he had a degenerative skin disease on both of his legs and that his DNA would have been on fabrics tested if he had been the one who killed the two victims. *Id.* His lack of DNA at the scene, therefore, supported his contention of innocence and claim that someone else murdered the victims. *Id.* The Circuit Court denied the petition without a hearing. *Id.* at 727, 976 A.2d at 1015.

Upon our review of the denial of Mr. Simms's petition, this Court held that the petition set forth a *prima facie* case and that the Circuit Court erred in denying the petition without a hearing. *Id.* at 733-34, 976 A.2d at 1019. Our reasoning there was based on the theory that DNA testing may have produced exculpatory evidence and that the type of testing requested was generally accepted in the relevant scientific community. *Id.* More specifically, we held that the DNA testing may establish that someone else, not Mr. Simms, was wearing the items of clothing, thus exonerating Mr. Simms as the killer. *Id.* Accordingly, this Court remanded the case to the trial court for further proceedings. *Id.* at 734, 976 A.2d at 1020.

In the context of a petition for a writ of actual innocence, the Court of Special Appeals has considered the standard for meeting a *prima facie* basis in a pleading. In *Snead v. State*, for example, the Court of Special Appeals recently noted:

> In assessing whether a petition satisfies the pleading requirement, the circuit court must "determine whether the allegations could afford a petitioner relief, if those allegations would be proven at a hearing," after viewing "the facts in the light most favorable to the petitioner and accepting all reasonable inferences that can be drawn from the petition."

224 Md. App. 99, 108, 119 A.3d 137, 142 (2015). That standard, although low, is not without a floor, as the Court of Special Appeals has pointed out in *Keyes v. State¸* 215 Md. App. 660, 84 A.3d 141 (2014). There, our intermediate appellate court held that, "the circuit court was not required to consider a bald, unsupported factual allegation, and, to the extent it may not have done so, it did not err in denying the petition without a hearing." *Id.* at 674, 84 A.3d at 149. This standard favors giving the movant the benefit of the doubt in his or her pleading such that a motion should be denied without a hearing only when, assuming all allegations are true, the movant is still not entitled to relief.

*Newly Discovered Evidence Which Could Not Have Been Discovered by Due Diligence*

A party moving for a new trial on the ground of newly discovered evidence, under subsection (c) of Rule 4-331, which allows for the granting of a new trial within a one-year period of the court-imposed sentence, must establish that he acted with due diligence. *Jackson v. State*, 164 Md. App. 679, 688-89, 884 A.2d 694, 699-700 (2005). "Due diligence" requires that the "defendant act reasonably and in good faith to obtain the

13

evidence, in light of the totality of the circumstances and the facts known to him or her."

*Argyrou v. State*, 349 Md. 587, 605, 709 A.2d 1194, 1203 (1998).

In *Jackson v. State*, 358 Md. 612, 751 A.2d 473 (2000), this Court affirmed that Petitioner Fransharon Jackson had acted with due diligence for purposes of a motion for new trial filed under Rule 4-331. *Jackson*, 358 Md. at 626, 751 A.2d at 480. In that case, Ms. Jackson and Corey Williams bound and gagged an individual during a robbery. *Id.* at 615, 751 A.2d at 474. Ms. Jackson and Mr. Williams were tried separately. *Id.* At a hearing conducted prior to her trial, after Mr. Williams had already been convicted in a separate trial, the trial judge determined that it was Ms. Jackson who had gagged the victim. *Id.* at 617, 751 A.2d at 475. Several months after the trial judge made that determination in Ms. Jackson's trial, Mr. Williams, while his appeal was pending, submitted a hand-written note in which he admitted that he in fact, and not Ms. Jackson, gagged the victim. *Id.* at 617, 626, 751 A.2d at 476, 480.

We observed that the Court of Special Appeals had determined that there was "nothing 'new' in the second motion for new trial that could not have been raised in the first motion." *Id.* at 626, 751 A.2d at 480. This Court noted that "[t]here [was] no compelling evidence that testimony from Williams that he, not [Ms. Jackson], gagged the victim was, or in the exercise of due diligence could have been, available to [Ms. Jackson] prior to . . . when her first motion was decided." *Id.* In this way, we rejected the analysis of the Court of Special Appeals that Ms. Jackson failed to act with due diligence. This Court held that because "it was not the kind of admission [Mr. Williams] could reasonably

14

be expected to make while his appeal was still pending," that Ms. Jackson had fulfilled the due diligence standard for purposes of Rule 4-331. *Id.*

*Evidence That Is Sufficiently Material and Persuasive*

"Evidence offered as newly discovered must be material to the result of the trial . . . mean[ing] that it must be more than 'merely cumulative or impeaching.'" *Argyrou v. State*, 349 Md. 587, 601, 709 A.2d 1194, 1201 (1998). In *Jackson v. State,* a case concerning an alleged recantation of testimony, the Court of Special Appeals explored the materiality aspects of newly discovered evidence, and, specifically, the distinction between "impeaching" and "merely impeaching" evidence. 164 Md. App. 679, 697-99, 884 A.2d 694, 704-06 (2005). Kevin Jackson ("Mr. Jackson") was convicted of two counts of sexual child abuse. *Id.* at 684, 884 A.2d at 697. In a Rule 4-331(c) motion, Mr. Jackson alleged that the victim had "recanted her testimony that she was abused by the Defendant" and that he should therefore receive a new trial. *Id.* at 688, 884 A.2d at 699. The trial court found that the victim had not recanted her testimony and denied the motion for new trial. *Id.* at 721, 884 A.2d at 718.

Upon appeal, the Court of Special Appeals explained that evidence that is "merely impeaching" does not warrant a new trial based on newly discovered evidence. *Id.* at 698, 884 A.2d at 704. The Court of Special Appeals held that "evidence that a State's witness had a number of convictions for crimes involving truth and veracity or had lied on a number of occasions about other matters . . . would constitute collateral impeachment and would, therefore, be 'merely impeaching.'" *Id.* at 697-98, 884 A.2d at 704. Alternatively, if the evidence was that "the State's witness had actually testified falsely on the core merits of

15

the case under review, that evidence, albeit coincidentally impeaching, would be directly exculpatory evidence on the merits and could not, therefore, be dismissed as 'merely impeaching.'" *Id.* at 698, 884 A.2d at 704-05. In other words, impeaching a witness on inconsequential details of his testimony would not warrant a new trial. But, impeaching evidence that directly calls into question a significant issue in the case may result in a new trial if the evidence raises core issues on the merits of the case.

*Application of Law to Facts*

Again, our task is to determine whether the two statements that Mr. Cornish offered as "newly discovered evidence" fulfilled the movant's burden to satisfy the *prima facie* requirements of Rule 4-331(f). Upon meeting this burden, a Petitioner is entitled to a hearing on the merits of the motion. Upon our review of Mr. Cornish's motion, we conclude that Mr. Cornish satisfied his burden and was entitled to a hearing on the merits of his motion. To be clear, we do not reach the merits of Mr. Cornish's claim that he is entitled to a new trial.

A. *The First Statement*

The first statement offered by Mr. Cornish as newly discovered evidence is a May 2013 statement by Mr. Pope to two law enforcement officers. According to Mr. Cornish's motion for new trial, Mr. Pope made a statement in May 2013 in which he

> referred to the Boone murder, saying 'apparently,' Mr. Cornish killed his homeboy, Warren Boone, two weeks after the bank robbery. According to [Mr.] Pope, in this interview, he hooked up Boone and Cornish for a weed deal, and he saw Cornish with his car a few days later. In this interview, Mr. Pope maintained that he hooked Boone and Cornish up and then went on his business.

16

Mr. Cornish's defense counsel proffered that the May 2013 statement was inconsistent with Mr. Pope's testimony at Mr. Cornish's trial. Specifically, counsel argued in the motion that the statement "contains additional, different, and inconsistent statements about the Boone murder, to include what appears to be Mr. Pope distancing himself from the incident." This information directly contrasts with what Mr. Pope testified to at trial.

Additionally, the State admitted to not knowing of the statement until Mr. Cornish proffered its existence in his motion, reproduced in part above. Had the State known about the statement, the State would have been obligated to provide it to Mr. Cornish as exculpatory evidence pursuant to *Brady v. Maryland*. 373 U.S. 83, 83 S. Ct. 1194, 10 L.Ed.2d 215 (1963).[4] Because the State was apparently unaware of the statement until Mr. Cornish filed his Motion for New Trial on January 26, 2017, the State could not have included it with two other statements Mr. Pope made that were provided via *Brady* disclosures. Implicit in Mr. Cornish's argument with respect to the *Brady* violations is that because the statement was not disclosed, or even known prior to trial, it is newly discovered evidence that could not have been discovered with due diligence under Rule 4-331(a). Although we conclude that on its face, it appears that this evidence could not have been discovered by due diligence in time to move for a new trial within ten days of the verdict, we do not reach the merits of that claim. Our conclusion is limited to whether the statement, on a prima facie basis, could not have been discovered with due diligence.

---

[4] *Brady* evidence is evidence that is favorable to the accused. If access to this evidence is denied to the accused, or suppressed, it amounts to a denial of due process. *See Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L.Ed.2d 215 (1963).

17

Although it is reasonable to conclude that the statement could not have been discovered with due diligence based on Mr. Cornish's pleading, at the hearing on his motion, Mr. Cornish will need to prove that the statement could not have been discovered with due diligence to prove his claim. In previous cases, we have emphasized that "although [a movant] has satisfied the pleading requirement to assert grounds for relief, it does not follow automatically that he can prove his claim." *State v. Hunt*, 443 Md. 238, 257, 116 A.3d 477, 488 (2015) (*citing Douglas v. State*, 423 Md. 156, 186, 31 A.3d 250, 268 (2011)). Additionally, we observe that the statement is also sufficiently material and persuasive, on its face, such that the evidence may well have produced a different result had it been produced at trial. Mr. Pope's testimony was the primary evidence offered by the State to prove Mr. Cornish's guilt. Any doubt as to Mr. Pope's credibility is material because of the State's substantial reliance on his testimony to establish the guilt of Mr. Cornish. The statement is also material because it belies Mr. Pope's involvement in Mr. Boone's murder according to his testimony. Had it been known at the time of trial, the statement could have been used not only to impeach Mr. Pope but to establish his complicity in the criminal enterprise. In other words, if the jury were persuaded that Mr. Pope was lying about his involvement in Mr. Boone's murder, then this statement may have produced a different result at trial.

The evidence directly impeached Mr. Pope's trial testimony and could have affected his credibility with the jury. For example, the jury could have disbelieved Mr. Pope's version of the events with respect to Mr. Cornish's involvement, leaving jurors with reasonable doubt as to Mr. Cornish's guilt. Alternatively, the jury might have believed that

18

Mr. Pope was involved in orchestrating Mr. Boone's murder and, thus, have reasonable doubt as to Mr. Cornish's agency in the act. Notwithstanding our conclusions about the *prima facie* aspects of the May 2013 statement, Mr. Cornish must sufficiently prove that the evidence is newly discovered by way of establishing that it could not have been discovered by due diligence in time to move for a new trial and that it is material. *See* Md. Rule 4-331(a) and (c) *and Love v. State*, 95 Md. App. 420, 432, 621 A.2d 910, 916 (1993).

### B. The Second Statement

Another statement Mr. Cornish offered in a supplement to his first motion, along with his reply to the State's response, is a December 2016 statement by Mr. Pope. According to an affidavit attached to the supplemental motion, Mr. Pope indicated in December of 2016 to Mr. Kanwisher, an investigator with the Federal Public Defender, why he really changed his mind about testifying on the morning of Mr. Cornish's trial. The affidavit, signed by Mr. Kanwisher, provides:

> 27. On the day of the Boone trial, he was woken up at 4:30 a.m. by Detective Kershaw and another detective;
> 28. The detectives drove with him for about five (5) minutes down the road from R[oxbury] C[orrectional] [Institution] and they then pulled over;
> 29. The detectives then showed his cell phone data that showed he was at the scene of the murder;
> 30. Mr. Pope admitted to the detective that he was at the scene;
> 31. After that, Detective Kershaw called the [Assistant State's Attorney] and they discussed immunity;
> 32. Mr. Pope asked: "you sure you not gonna charge me?"
> 33. Mr. Pope said that his intention was to refuse to testify;
> 34. When Detective Kershaw confronted him with his cell phone data, he threatened to charge him if he did not testify;
> 35. Mr. Pope said that he received formal immunity at the bench, before trial.

19

Consistent with the *prima facie* standard, this statement is newly discovered and could not have been discovered by due diligence in time to move for a new trial pursuant to section (a) of Rule 4-331. This evidence did not exist within 10 days of the verdict that was rendered on November 3, 2016 and therefore fulfills the requirement of Rule 4-331(c). Apparently, only Mr. Pope, Det. Kershaw and the prosecutor knew about the information leading up to and including the grant of immunity. Mr. Pope did not tell Mr. Kanwisher about these facts until months after Mr. Cornish's trial had ended.

The statement is also sufficiently material as to fulfill the *prima facie* requirement per Rule 4-331(f). Mr. Pope's testimony was the primary evidence offered by the State to prove Mr. Cornish's guilt; therefore, any doubt as to his credibility is material to Mr. Cornish's trial. The statement raises doubt about Mr. Pope's testimony that he had changed his story on the morning of trial because it was the "right thing to do." Finally, the statement is material in that it impeaches the trial testimony of Det. Kershaw. Specifically, Det. Kershaw testified that he was "shocked" by Mr. Pope's revelation that he had been present at the murder scene. Up to that point, Mr. Pope had denied any involvement with Mr. Boone's murder in his discussions with the police. Apparently, however, Det. Kershaw played an instrumental role on the morning of Mr. Cornish's trial in getting Mr. Pope to testify and implicate himself in the murder. If true, it is suspect that Det. Kershaw would be "shocked" by Mr. Pope's admissions.[5]

---

[5] On this point, we observe that the second statement may be found by the trial court to be "merely impeaching" as to Det. Kershaw's testimony; however, on its face, the statement

(continued . . .)

Perhaps, most importantly, Mr. Pope's statement implicates him in the murder of Mr. Boone, more so than when he originally testified. The statement brings Mr. Pope's stated motive for testifying directly into question. His statement indicates that he was induced to testify the way he did to avoid being prosecuted for the crimes, rather than because it was the "right thing to do." Pursuant to Mr. Pope's admission, he was present when Mr. Boone was killed, helped drag Mr. Boone's body out of the car and into the woods and then helped burn the vehicle. Further, he admits to ransacking Mr. Boone's home the day after his killing in search of drugs and money. This new evidence is relevant to establish Mr. Pope's participation in the victim's death and in covering up the various crimes as well as his apparent motive to testify. Accordingly, the trial court must decide, at a hearing, whether this amount of impeachment is "merely impeaching" and/or exculpatory, such that the newly discovered evidence warrants a new trial.

Because Mr. Cornish alleged a *prima facie* basis for newly discovered evidence, pursuant to a motion for a new trial filed under Rule 4-331(c), the trial court erred when it denied Mr. Cornish's request without a hearing. We, therefore, remand for a hearing on the merits of the motion.

## CONCLUSION

The statements Mr. Cornish offered in his motion for new trial and its supplement met the threshold for newly discovered evidence. The trial court failed to consider whether

---

(. . . continued)

is more than a bald, unsupported allegation. *Compare Jackson,* 164 Md. App. 679, 697-99, 884 A.2d 694, 704-05 (2005), *with Keyes*, 215 Md. App. 660, 674, 84 A.3d 141, 149 (2015).

Mr. Cornish presented a *prima facie* case based on the newly discovered evidence.  In doing so, the trial court erred in summarily denying Mr. Cornish's motion without a hearing.  We reverse the judgment of the Court of Special Appeals and direct the remand of the matter to Circuit Court for a hearing on the merits of Mr. Cornish's motion.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REMAND THE CASE TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR A HEARING. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT.**